**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Albert Louis KEEN, Defendant-Appellant.**

No. 74–1468.

United States Court of Appeals, Ninth Circuit.

Nov. 27, 1974.
Certiorari Denied April 21, 1975.

See 95 S.Ct. 1655.

---

Frank August Peters (argued), Tacoma, Wash., for defendant-appellant.

J. S. Obenour, Asst. U. S. Atty., Tacoma, Wash. (argued), for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and SMITH,* District Judge.

## OPINION

CHOY, Circuit Judge:

On December 6, 1972, a commercial fishing boat, the Hombre, was tied to a dock in Hoquiam, Washington. Its owner Donald Johnson, accompanied by a friend, stepped aboard and fired the ignition. The boat exploded and sank. Johnson lost both legs. The government produced evidence that Albert Keen some weeks earlier had attempted to hire some men to bomb the Hombre, and, failing in that attempt, had himself wired a bomb to the ignition. Keen was convicted by a jury of two violations of 18 U.S.C. § 844(i):[1] first for attempting to destroy, by means of an explosive planted by hired third parties, property used in interstate commerce; and second for accomplishing this goal himself. He appeals. We affirm the conviction.

■ Keen's principal contention is that the trial judge erred in admitting into evidence a damaging telephone conversation that had been recorded in violation of state law. A government agent recorded a conversation between Keen and an informer named Roy Doiron with Doiron's prior consent. Under the laws of the State of Washington, a wire tap is illegal unless *both* parties to the conversation consent. R.C.W. § 9.73.030. The Government relies on Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., as permitting governmental wire taps without a warrant when *one* party consents. 18 U.S.C. § 2511(2)(c).[2] Section 2511(2)(c) is worded as an exception to that section's general prohibition of judicially non-authorized wire taps, not as a positive authorization of such taps. In other words, section 2511(2)(c) left prior law of consensual wire taps intact. It is not clear, therefore, that Congress showed an intention to displace more rigorous requirements found in state laws.

■ Nevertheless, Keen overlooks the fact that the exclusionary rule is a remedy integrally bound up with the constitutional protections of the fourth amendment.[3] Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). It is a constitutional limitation on the introduction of evidence possessing conceded probative value. The Supreme Court has

---

* The Honorable Russell E. Smith, Chief Judge, United States District Court for the District of Montana, sitting by designation.

1. 18 U.S.C. § 844(i):

   (i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce . . ..

2. 18 U.S.C. § 2511(2)(c):

   (c) It shall not be unlawful *under this chapter* for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. [emphasis added]

3. The exclusionary rule also bars use of evidence obtained in violation of other constitutional guarantees. *See, e. g.,* Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). In addition, federal law may prohibit explicitly the admission of certain types of evidence. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937); Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968) (Communications Act of 1934, ch. 652, § 605, 48 Stat. 1103, forbidding divulgence of intercepted telephone messages, prohibited their introduction as evidence in court). The Court has also excluded confessions obtained in violation of the Federal Rules of Criminal Procedure. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

not been liberal in extending application of the exclusionary rule; it has restricted its application in wiretap cases to those whose fourth amendment rights have been violated directly. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Wire taps obtained with the consent of one party to a conversation do not violate the fourth amendment, however. Holmes v. Burr, 486 F.2d 55 (9th Cir.), cert. denied, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973). *See* United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

■■■ Where no constitutional right has been abused, the admissibility of evidence is governed by common law principles, not by local statute. Wolfle v. United States, 291 U.S. 7, 13, 54 S.Ct. 279, 78 L.Ed. 617 (1934); Olmstead v. United States, 277 U.S. 438, 469, 48 S.Ct. 564, 72 L.Ed. 944 (1928); United States v. Woodall, 438 F.2d 1317, 1327 (5th Cir. 1970), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971). *See* Fed.R. Crim.P. 26. At common law, evidence was admissible regardless of its illegal origins. United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). Therefore, wiretap evidence obtained in violation of neither the Constitution nor federal law is admissible in federal courts, even though obtained in violation of state law. On Lee v. United States, 343 U.S. 747, 754–755, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Olmstead v. United States, 277 U.S. 438, 469, 48 S.Ct. 564, 72 L.Ed. 944 (1928); United States v. American Radiator & Standard Sanitary Corp., 278 F.Supp. 241, 253 (W.D.Pa. 1967), rev'd on other grounds, 388 F.2d 201 (3d Cir.), cert. denied sub nom. Decker v. United States, 390 U.S. 922, 88 S.Ct. 857, 19 L.Ed.2d 983 (1968). *Cf.* Zaroogian v. United States, 367 F.2d 959 (1st Cir. 1966).

■■ Doiron's recorded call to Keen was not an attempt to elicit a confession after the process had shifted from investigatory to accusatory within the meaning of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The Court in *Escobedo* was concerned with the unequal contest between a suspect taken into custody and a police interrogator.[4] "The simple and peaceful process of questioning breeds a readiness to resort to bullying and to physical force and torture." 378 U.S. at 489, 84 S.Ct. at 1764 *quoting* 8 Wigmore, Evidence (3d ed. 1940) at 309. Keen believed he was talking to an acquaintance by telephone, not to the police. He was subjected to no possibility of moral or physical coercion. He was thus not deprived of his sixth amendment right to counsel.

■■■ Keen's other contentions can be disposed of rather swiftly. The district court exercised its discretion soundly in refusing to order separate trials on the two counts of the indictment. Keen's destruction of the Hombre and his earlier attempts to employ others to do the deed were natural parts of a single narrative. Bayless v. United States, 381 F.2d 67, 72 (9th Cir. 1967). Evidence produced at a trial on one count would be admissible at a trial on the other to show Keen's identity, motive, intent, and the existence of "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other . . .." Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964). Under these circumstances, furthermore, the court did not abuse its discretion in refusing to instruct the jury that each charge and the evidence pertaining to it should be considered separately.

---

4. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966):

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. n. 4: "This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused."

The jury was selected under the "Arizona system." Thirteen prospective jurors were seated in the jury box and 15 more were seated behind counsel during voir dire. Counsel objects that he was unable to watch the reactions of all the jurors, especially while the judge interrogated the panel collectively. He claims that he consequently was unable to make intelligent use of his peremptory challenges. A trial judge certainly should endeavor during voir dire to give both sides a maximum opportunity to assess the predispositions and reactions of prospective jurors. Nonetheless, he is afforded a large measure of discretion in setting procedures for jury selection. Haslam v. United States, 431 F.2d 362, 364 (9th Cir. 1970), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). The record indicates a scrupulous attempt by the trial judge to be fair to Keen; we find no abuse of his discretion.

Keen argues that the government failed to produce evidence of the specific effect which Johnson's boat had on interstate commerce. However, there was ample evidence that the boat was used in commercial fishing and that the catch was shipped interstate. Commercial fishing of the type concerned here is an industry affecting interstate commerce, and the court properly so instructed the jury. To the extent that Keen challenges the power of Congress to enact § 844(i), his argument is foreclosed by Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), in which the Supreme Court clearly rejected an analogous contention.

We have considered carefully appellant's objections to the sufficiency of the evidence. We cannot say that, considered in a light most favorable to the government, the evidence did not permit the jury to conclude that Keen was guilty beyond a reasonable doubt. United States v. Gardner, 475 F.2d 1273, 1275 (9th Cir. 1973).