**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert P. KAISER, Ernesto Acosta, Deborah Lee Schafer, David R. Remsing, and Theodore House, Defendants-Appellants.**

**Nos. 80–1415 to 80–1418 and 80–1628.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1981.

Decided Nov. 2, 1981.

Rehearings Denied Dec. 10, 1981.

Moe Birnbaum, Tacoma, Wash., for Kaiser.

Peter Kram, Tacoma, Wash., for Acosta.

Irwin H. Schwartz, Seattle, Wash., for Schafer.

James M. Healy, Healy, Healy & Murdach, Tacoma, Wash., for Remsing.

Jay C. Immelt, Tacoma, Wash., for House.

Jerry Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before HUG and SKOPIL, Circuit Judges, and EAST,* District Judge.

EAST, District Judge:

Defendants appeal from judgments of conviction under various counts of a thirteen count indictment which charged conspiracy to distribute heroin, 21 U.S.C. § 846, six counts of distribution of heroin, 21 U.S.C. §§ 841(a)(1), four counts of interstate travel to promote an unlawful activity, 18 U.S.C. §§ 1952(a)(2) and (3), and two counts of possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1).

Defendant House's trial was severed pending determination of his competency to stand trial. The remaining five defendants

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

were tried together, and at the close of the Government's case, the District Court granted a judgment of acquittal for defendant Kaiser[1] and an order of dismissal for defendant Acosta on their conspiracy counts. The court also entered judgments of acquittal for defendant Remsing on two distribution counts, and for defendant Kaiser on one distribution count. The jury convicted each defendant on all of the remaining counts. In his separate trial, defendant House was convicted on the conspiracy count and on each of the underlying substantive counts charged.

## I. *REMSING, SCHAFER,[2] KAISER AND ACOSTA TRIAL*

### A. *Facts*

On September 5, 1979, defendant House sold two bindles of heroin to Doug Taylor, an undercover agent of the Drug Enforcement Administration (DEA) and an informant. Defendant Schafer was accompanying House that day, but was not present when the sale occurred. On September 14, 1979, House and Schafer again met with Agent Taylor and the informant. The four discussed methods of processing and dealing drugs, and agreed to the sale of some more heroin. Schafer delivered the heroin to Agent Taylor in the presence of the informant.

About two weeks later, House and Schafer met with Agent Taylor and the informant in Vancouver, Washington and agreed to sell a larger amount of heroin. House indicated that he would have to travel to Astoria, Oregon to get the heroin, and the four agreed to meet there. After House and Schafer arrived in Astoria, several DEA agents followed them to a residence in Ilwaco, Washington. That residence had phone service listed in defendant Remsing's name. House and Schafer then returned to Astoria and delivered a bindle of heroin to Agent Taylor.

Agent Taylor again met with House and Schafer in Vancouver, Washington on October 16, 1979. House and Schafer agreed to sell more heroin, and traveled to Long Beach, Washington via Astoria, Oregon. While enroute, they made a phone call to a tavern owned by Remsing in Long Beach. They then went to the tavern, where Schafer was observed meeting briefly with Remsing. House and Schafer then returned to Astoria, Oregon and delivered heroin to Agent Taylor. The heroin was wrapped in a page from a magazine.

The informant testified at trial that he had been buying heroin from Remsing since 1978, but that Remsing had stopped selling to him because he owed Remsing some money. The informant made a taped call to Remsing on October 25, 1979 to set up a meeting to repay the debt and to discuss future heroin transactions. Another taped call to Remsing was made on October 30, during which the informant ordered a "spare tire," the agreed upon code word for a bindle of heroin. The informant then went to Remsing's tavern and purchased the heroin from Remsing. This heroin was wrapped in a page from the same issue of the same magazine as that which had been previously delivered to Agent Taylor by House and Schafer.

Remsing again met with the informant on November 19, 1979. During this conversation, which the informant taped, Remsing talked at length about how long he had been in the heroin business, the large amounts of money he had made, and his method of dealing with his supplier. He also offered to sell his connection to the informant.

In separate transactions, defendant Acosta sold three balloons of heroin to a Deputy Sheriff on September 25, 1979, and defendant Kaiser sold a bindle of heroin to the informant on September 29, 1979. At trial,

---

1. A judgment of acquittal was also entered on the conspiracy count with respect to one McLaury, a defendant not a party to this appeal.

2. Defendant Schafer married defendant House between the time of the indictment and trial, and was sometimes referred to as Deborah House during the trial. For clarity, we shall refer to her as Schafer.

the Government's efforts to tie these defendants to each other and to Remsing were forestalled by evidentiary rulings.

## B. *Variance and Sufficiency of the Evidence*

Remsing and Schafer contend that the evidence was insufficient to support their conspiracy convictions because the proof varied fatally from the crime charged in the indictment. They contend, therefore, that the District Court erred by refusing to grant them judgments of acquittal on that count. They argue that the Government (1) failed to prove that they were part of any conspiracy, or failed to connect Kaiser, Acosta, McLaury, and House to the conspiracy, if one existed, (2) failed to prove a conspiracy of five years duration, and (3) proved multiple conspiracies rather than the single conspiracy charged.

■ Although we reverse the conspiracy convictions of Remsing and Schafer because of certain evidentiary errors discussed below, we address the variance claims because they are cast in the form of allegations that the evidence was insufficient. If true, these allegations would invoke double jeopardy protections against retrial. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

In reviewing the sufficiency of the evidence to support the convictions, we must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir. 1979), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ The essential elements of conspiracy are agreement to accomplish an illegal objective coupled with one or more overt acts in furtherance of the illegal purpose, and the requisite intent to commit the underlying substantive offense or offenses. *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir. 1980). The evidence here was suf-

ficient to support a finding that Remsing, Schafer, and House conspired to distribute heroin, to possess it with intent to distribute, and to engage in interstate travel to promote these activities.

■ The other variances alleged by Remsing and Schafer are not fatal. A variance between indictment and proof does not require reversal unless it affects the substantial rights· of the parties. *United States v. Durades*, 607 F.2d 818, 819 (9th Cir. 1979). Such prejudice is certainly not shown every time the Government fails to connect one or more of the defendants to a conspiracy, and this court has upheld the convictions of multiple conspirators where the convictions of some of their coconspirators have been reversed. *See, e.g., United States v. Peterson*, 549 F.2d 654, 657 (9th Cir. 1977). Here, the testimony pertaining to the three defendants acquitted on the conspiracy count in no way related to or implicated Schafer, Remsing ˙or House. Without some common link between the two groups of defendants, there is no reason to assume that the defendants' substantial rights were prejudiced by a high risk of guilt transference from the members of one group to the members of another, as occurred in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and *United States v. Kenny*, 645 F.2d 1323 at 1334 (9th Cir. 1981).

■ There is no evidence here of multiple conspiracies, and thus there is no variance with regard to the number of conspiracies charged and proven. It was, therefore, no error to refuse the requested multiple conspiracies instructions.

■ The contention that there was a variance between the duration of the conspiracy charged and that proven is incorrect. The indictment alleged that the conspiracy began at a time unknown but "within the last five years" and continued until January 18, 1980. It did not allege that the conspiracy had lasted an entire five years.

## C. Travel Act Counts

■ Remsing and Schafer also contend that the evidence was insufficient to support their convictions on the Travel Act counts, 18 U.S.C. § 1952. The Travel Act proscribes, in part, interstate travel to promote unlawful "business enterprises" involving narcotics or controlled substances. 18 U.S.C. § 1952(a)(3) and § 1952(b)(1). The words "business enterprise" refer to a continuous course of criminal conduct rather than sporadic or casual involvement in a proscribed activity. *United States v. Donaway*, 447 F.2d 940, 944 (9th Cir. 1971).

■ Remsing and Schafer urge that the evidence showed only isolated instances of proscribed interstate travel, not a continuous course of criminal conduct. We disagree. The statute requires only that the business enterprise be continuous, not that the interstate travel be continuous. Here, the evidence of repeated sales of heroin was sufficient to establish a continuous course of criminal conduct, and the evidence was sufficient to establish that the defendants traveled across state lines four times in pursuit of their unlawful business enterprise, thus violating the statute.

■ We reverse Remsing and Schafer's Travel Act convictions due to the evidentiary errors discussed below, not for insufficiency of the evidence. We note, however, for the court's guidance on retrial that it was error to refuse to instruct the jury that it must find a continuous course of criminal conduct to convict defendants of the Travel Act counts.

## D. Evidentiary Errors

■ The testimony of Agent Taylor provided, in whole or in part, the necessary foundation for several of the Government's exhibits. His testimony was, however, stricken due to a purported violation of the Jencks Act, 18 U.S.C. § 3500. The District Court's determination that the exhibits were, absent Agent Taylor's testimony, adequately identified and authenticated under Fed.R.Evid. 901(a) to permit their admission is reviewable for abuse of discretion. *Unit-*

*ed States v. Hearst*, 563 F.2d 1331, 1349 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). Exhibit 4, a tape recorded conversation between Agent Taylor and defendant House, was identified only by Agent Taylor's testimony. Once Agent Taylor's testimony was stricken, the District Court abused its discretion by refusing to strike exhibit 4.

Similarly, Agent Taylor's testimony was necessary to adequately identify two small bindles of heroin marked as exhibits 7 and 8. Informant Woodard's additional, extremely equivocal identifications of those exhibits were not, standing alone, sufficient to provide a proper foundation.

■ Although we conclude that the District Court erred in striking Agent Taylor's testimony, as discussed below, we reject the Government's contention that this testimony should, therefore, be considered in evaluating the adequacy of the identifications of the exhibits. The cross-examination of Agent Taylor terminated when his testimony was stricken. To now permit his testimony to provide a foundation for exhibits would effectively deny the defendants their opportunity to cross-examine Agent Taylor, and that we cannot do. *See generally, Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The District Court abused its discretion by admitting exhibits 7 and 8.

## E. Jencks Act Ruling

On September 12, 1979, Agent Taylor made a handwritten draft of a report pertaining to his purchase of heroin from defendant House on September 5. He gave the draft to his secretary for typing, made some revisions on the typewritten draft, and had it typed in final form. At the time of trial, he produced the typewritten report, but was unable to produce the original handwritten draft. The court found a violation of the Jencks Act, 18 U.S.C. § 3500, and ordered Agent Taylor's testimony stricken.

■ We agree with the Government's contention that Agent Taylor's destruction

of his handwritten rough draft of an investigative report did not constitute a violation of the Jencks Act. The Jencks Act requires, in part, that the Government produce written statements made by a witness and "signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). The draft of the report here was not intended as a final report. Nor was the draft similar to witness interview notes which are intended only to be factual accounts of what a witness said. *See United States v. Harris*, 543 F.2d 1247, 1252 (9th Cir. 1976).

Although the draft here differs in some respects from surveillance notes, which were held not to be producible "statements" in *United States v. Bernard*, 623 F.2d 551, 557–58 (9th Cir. 1979), it was neither intended as a final statement nor as simply a contemporaneously written factual account of what a witness said. *But see Harris*, 543 F.2d at 1252. It was, therefore, not "adopted or approved" by Agent Taylor within the meaning of 18 U.S.C. § 3500(e)(1), and thus was not producible.

### F. Consequences of Evidentiary Errors

We cannot say that the evidentiary errors were more probably than not harmless, and we must, therefore, reverse the conspiracy convictions of Schafer and Remsing. *United States v. Berry*, 627 F.2d 193 (9th Cir. 1980).

The jury was instructed that each member of a conspiracy may be held vicariously liable for the acts of co-conspirators committed during the course of the conspiracy, so long as it is reasonably foreseeable that the acts would be performed by one or more members of the conspiracy. Our review of the record indicates that the jury may have relied upon the vicarious liability theory in finding Remsing guilty of the distribution of heroin counts II, III, IV and VIII, and the interstate travel counts V, VII, IX and XII. Similarly, the jury may have imposed vicarious liability upon Schafer for distribution of heroin under count III, interstate travel to promote an unlawful activity under counts V, XII, IX and XIII, and possession with intent to distribute heroin under counts VI and XI.

Our reversal of the conspiracy convictions of Remsing and Schafer precludes the imposition of vicarious liability upon them for the acts of their alleged co-conspirators. Because we cannot now be certain that the jury did not rely upon the vicarious liability theory, we must reverse the convictions of Remsing and Schafer on those counts. *See Doyle v. United States*, 366 F.2d 394, 400 (9th Cir. 1966).

### G. Remsing's Other Convictions

Remsing's conviction on count XIII for distributing heroin suffers from none of the evidentiary errors which plagued the conspiracy conviction. This charge arose out of a simple sale of heroin by Remsing directly to an informant. The absence of any evidence of involvement in this sale by any of the other defendants precludes the possibility that the jury relied upon a theory of vicarious liability in finding Remsing guilty. Remsing's conviction on count XIII is affirmed.

We decline to review Remsing's conviction on count X. "This circuit follows the concurrent sentence doctrine under which the appellate court, as a matter of discretion, may decline to review a conviction under one count if a conviction under another count is affirmed and the sentences run concurrently and no adverse collateral legal consequences for the appellant result from the additional conviction[s]." *United States v. Martin*, 599 F.2d 880, 887 (9th Cir.), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979); *United States v. Ford*, 632 F.2d 1354, 1365, 1370 n.16 (9th Cir. 1980). Remsing's sentence on count X is concurrent to his sentence on count XIII, which we have affirmed. We find no adverse collateral legal consequences flowing from the additional conviction.

### H. Acosta and Kaiser

#### 1. Motions for Mistrial and Severance

An order of dismissal as to defendant Acosta and a judgment of acquittal as to defendant Kaiser were entered on the con-

spiracy count at the close of the Government's case. In addition, Kaiser was granted a judgment of acquittal on one count of distribution of heroin. Both Kaiser and Acosta were, however, convicted of single counts of distribution of heroin.

Acosta and Kaiser moved before and during trial to be severed from the other defendants. Fed.R.Crim.P. 14. In addition, Kaiser moved following the prosecution's case for a mistrial based on improper joinder under Rule 8. Fed.R.Crim.P. 8(b). Both defendants here claim that the District Court erred in denying these motions.

Acosta does not appear to raise any significant claim of prejudice concerning count VIII, the substantive charge upon which he was convicted. Because his arguments relate to the conspiracy count, on which he was acquitted, his claim of error on the severance issue is rejected.

Kaiser claims that he was improperly joined with the other defendants under Rule 8(b), and that even if the initial joinder was correct, being tried jointly prejudiced him to such an extent that it was error not to grant his Rule 14 motion for severance.

■■■ A conspiracy count can serve to link defendants in an indictment. *United States v. Valenzuela*, 596 F.2d 824, 829 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). This rule may not apply, however, if the conspiracy was charged in bad faith. *Id.; Donaway*, 447 F.2d at 943. Here, Kaiser offers no support for his claim of bad faith other than the directed verdict on the conspiracy count. With only his bare assertions here Kaiser has not established more than that the Government was unable to muster its proof.

■■■ We also reject Kaiser's contention that the District Court erred in denying his Rule 14 severance motion. Kaiser has failed to meet his burden of proving "clear," "manifest," or "undue" prejudice from the joint trial, and he has similarly failed to show that the jury was unable to compartmentalize the evidence. *United States v. Escalante*, 637 F.2d 1197, at 1200–

1201 (9th Cir. 1980) (modified in other respects August 27, 1980); and *Donaway*, 447 F.2d 940.

### 2. Chain of Custody Claims

Kaiser and Acosta were each convicted of only one count of distribution of heroin. Acosta contends that his conviction must be reversed because there was an inadequate chain of custody established for an exhibit consisting of balloons of heroin admitted against him.

■■■ In order to be admitted, the heroin must be shown to be in substantially the same condition as when the crime was committed. This determination is committed to the trial court, and will not be upset except for an abuse of discretion. *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). Factors to be considered include "the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it." *Id.*

■■■ Here, there is no evidence of any tampering nor any reason to believe that the heroin was not properly handled. The District Court thus appears justified in presuming that the heroin was properly mailed to the lab. And although there is a discrepancy about whether the exhibit contains two or three balloons, at least two were positively identified by both the deputy and the chemist sufficiently to uphold the conviction. There is no abuse of discretion, and this assignment of error by Acosta is rejected. *Cf. United States v. Christopher*, 488 F.2d 849 (9th Cir. 1973) (heroin exhibits admitted when initialed by agent and chemist).

■■■ Similarly without merit is Kaiser's contention that an inadequate chain of custody was established to permit the introduction of a heroin exhibit against him. Applying the presumption of regularity to the procedures of the DEA laboratory, and noting that there is no evidence of impropriety, the gap between the time the heroin was mailed to the lab and the time that the chemist examined it is not significant. *Gallego*, 276 F.2d at 917. Any error in the admission of the exhibit prior to the chem-

ist's testimony is harmless in light of that testimony. Finally, there is no indication that the taking of portions of the heroin by a DEA agent for testing, or possibly by the informant for use, in any way altered the composition of the substance ultimately analyzed by the chemist. There was no abuse of discretion by the District Court in admitting this exhibit.

## II. THE HOUSE TRIAL

### A. Facts

The facts adduced at the House trial were essentially the same as those established at the trial of the other defendants, except that no evidence pertaining to Kaiser, Acosta, or McLaury was introduced and Agent Taylor was permitted to testify.

### B. Hearsay Objections

House contends that there was not the required independent, sufficient, substantial evidence to establish the existence of a conspiracy and Remsing's connection to it, and that it was, therefore, error to admit evidence of certain statements made by Remsing under the declarations of coconspirators exception to the hearsay rule. *United States v. Weiner*, 578 F.2d 757, 768 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978).

■ We disagree. It was not necessary that all of the independent evidence establishing the conspiracy and Remsing's relation to it be introduced before Remsing's declarations could be used against House. *See, e. g., United States v. Di Rodio*, 565 F.2d 573, 576 (9th Cir. 1977). Here, the independent evidence of the existence of a conspiracy and Remsing's connection to it was sufficient and substantial enough to permit the introduction of Remsing's declarations.

### C. Sufficiency of the Evidence

House contends that the evidence, at most, ultimately proved only a conspiracy between Remsing and Schafer, and that the Government thus failed to prove the Remsing, Schafer, House conspiracy alleged.

The evidence, however, indicates active participation by House in the conspiracy.

Agent Taylor testified that after House had twice sold him small quantities of heroin, once with the assistance of Schafer, a larger purchase was arranged. House told Agent Taylor that he would have to travel to Astoria to obtain the larger quantity of heroin because his supplier lived in the area. House and Schafer together visited Remsing's house on that trip, and returned to Astoria with the heroin.

The Government also introduced a tape recording of a conversation between Agent Taylor and House in which House agreed to supply another large quantity of heroin. House and Schafer then met with Agent Taylor in Astoria, and then proceeded to Remsing's tavern in Long Beach, Washington, where Schafer met briefly with Remsing while House had a drink. Upon their return to Astoria, House handed a bindle of heroin to Schafer who in turn handed it to Agent Taylor.

■ We hold that this evidence is sufficient to permit a rational trier of fact to find beyond a reasonable doubt that House was a member of the conspiracy. *United States v. Bailey.*

### D. Tape Recordings

House argues that the District Court should have suppressed recordings of several conversations which were obtained with the consent of only one party. He contends that they were made in violation of Washington state law prohibiting recordings absent consent of all parties or a court order and were, therefore, required to be excluded under 18 U.S.C. § 2518(10)(a)(i) (codifying exclusionary rule for communications "unlawfully intercepted").

■ House's contention has been rejected by this circuit in the context of this same Washington statute. *United States v. Zemek*, 634 F.2d 1159, 1164 n.4 (9th Cir. 1980); *United States v. Keen*, 508 F.2d 986 (9th Cir. 1974), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). In *Keen*, the court held that "wiretap evidence obtained in violation of neither the Constitution nor federal law is admissible in federal courts, even though obtained in violation of state law." *Keen*, 508 F.2d at 989.

House argues that *Keen* is not applicable here because that case did not discuss the exclusionary provisions of § 2518(10)(a)(i).

Title 18 U.S.C. § 2511(2)(c) provides:

"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

The interception is therefore not unlawful under 18 U.S.C. § 2518(10)(a)(i), which is a part of the same chapter. Thus the discussion of the non-applicability of the exclusionary rule to the wiretap evidence in *Keen* applies as well to this case.

## III. *CONCLUSION*

The convictions of Remsing on counts X and XIII are affirmed. His convictions on counts I, II, III, V, VII, IX, and XII are reversed. Schafer's convictions are all reversed. Kaiser's conviction on count VIII is affirmed, as is Acosta's conviction on count IV. House's convictions on counts I, II, III, V, VI, VII, IX, XI and XII are affirmed.

AFFIRMED IN PART, REVERSED IN PART.