**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVE HARRISON,
      *Petitioner-Appellant,*

v.

DERRICK L. OLLISON, Warden,
      *Respondent-Appellee.*

No. 06-55470

D.C. No.
CV-05-01465-DMS

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
September 27, 2007—Pasadena, California

Filed March 20, 2008

Before: J. Clifford Wallace, Thomas G. Nelson, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**COUNSEL**

Kurt David Hermansen, Law Office of Kurt David Hermansen, San Diego, California, for the petitioner-appellant.

Carol C. Lam, United States Attorney; Bruce R. Castetter, Lawrence E. Spong, Assistant United States Attorneys, San Diego, California, for the respondent-appellee.

**OPINION**

IKUTA, Circuit Judge:

A federal prisoner challenging the legality of a sentence must generally do so by a motion pursuant to 28 U.S.C. § 2255. However, when a motion under § 2255 is "inadequate or ineffective to test the legality" of a prisoner's detention, *see id.*, a prisoner may bring a habeas petition under 28 U.S.C. § 2241. This appeal requires us to determine whether the petitioner, Dave Harrison, was entitled to bring his habeas petition under § 2241. Before reaching that question, we must determine whether Harrison needs a certificate of appealability, *see* 28 U.S.C. § 2253(c), before he can appeal the district court's dismissal of his § 2241 petition for lack of jurisdiction.

I

In 1988, Dave Harrison was charged with using a pipe bomb to blow up a 1978 Volkswagen van and with burning a 1974 Reinell cabin cruiser motorboat. Harrison pleaded guilty in the district court for the Southern District of California to bombing and arson, in violation of 18 U.S.C. § 844(i).[1] This federal arson statute includes an interstate commerce element for purposes of establishing federal jurisdiction, namely, that the arson must have affected a "building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *Id.*

As part of the plea agreement, both Harrison and the government stipulated to the interstate commerce component of § 844(i). For the van, the parties stipulated:

> [A]t the time the van was driven and used in the commercial business which [Harrison's wife] delivered, basically delivered cakes to many people[;] those cakes have traveled in interstate commerce.

---

[1]18 U.S.C. § 844(i) states:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

In addition, the van was fueled with gasoline that had traveled in interstate and foreign commerce; and, finally, the van itself had been manufactured in the Republic of West Germany, having traveled in foreign commerce, had been sold here in California and replacement parts necessary to repair the damage that the defendant did will also travel in interstate and foreign commerce.

The parties stipulated to the interstate commerce component for the cabin cruiser motorboat as follows:

[T]he boat was manufactured in 1974 in the state of Washington. It was traveling in interstate commerce and was sold in California. At the time it was destroyed had been [sic] many parts had traveled in interstate commerce. The boat was licensed in the state of Nevada and the owner of the boat paid a fee to a business for the care and maintained and stored the boat in the state of Nevada where it was moored most of the time. The owner of the boat frequently crossed state lines with it bringing it to California and between Nevada and Arizona.

Harrison was sentenced by the district court for the Southern District of California to two consecutive ten-year prison terms for the arson and bombing, which were to be followed by a five-year probationary term for aiding and abetting the interstate transportation of stolen property. Harrison is currently in state prison in the Central District of California and will commence federal parole upon his release.[2] For purposes

---

[2]Following the federal conviction at issue in this case, Harrison was convicted in California state court of the first degree murder of his former wife. Due to the pending sentence of federal parole, Harrison is "in custody" for purposes of the federal habeas provisions, § 2241(c) and § 2255. *See Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 488-89 & n.4 (1973) (petitioner may challenge future imposition of sentence for which detainer has been lodged while in custody for earlier sentence of different sovereign); *Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963) (parole "significantly restrain[s] petitioner's liberty" sufficient to satisfy " 'custody' . . . within the meaning of the habeas corpus statute").

of clarity, we will refer to the district court for the Southern District of California, where Harrison was sentenced, as the "sentencing court," and the district court for the Central District of California, where Harrison is in custody, as the "custodial court."

Harrison filed a timely notice of appeal on March 1, 1989. We dismissed the appeal for failure to prosecute on June 28, 1989. Apparently unaware of this dismissal, Harrison also filed a motion for voluntary dismissal of his appeal on August 1, 1989.

Following his direct appeal, Harrison attempted to challenge his conviction and sentence by means of motions under § 2255 and petitions under § 2241. The history of Harrison's collateral challenges to his conviction must be understood in the context of these two bases for collateral relief from federal sentences, § 2255 and § 2241, and the limitations Congress has imposed on these forms of relief.

## A

As a general rule, "§ 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000). Section 2255 allows a federal prisoner claiming that his sentence was imposed "in violation of the Constitution or laws of the United States" to "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. A prisoner may not bring a second or successive § 2255 motion in district court unless "a panel of the appropriate court of appeals" certifies that the motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evi-

dence that no reasonable factfinder would have found the movant guilty of the offense; or

(2)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255. Nor may a prisoner appeal the denial of a § 2255 motion unless this court or the district court issues a certificate of appealability under § 2253(c).[3] 28 U.S.C. § 2253(c)(B). Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.*

"Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). There is an exception, however, set forth in § 2255: A federal prisoner may file a habeas petition under § 2241 to challenge the legality of a sentence when the prisoner's remedy under § 2255 is "inadequate or ineffective to

---

[3]28 U.S.C. § 2253(c) states:

(1)   Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

   (B) the final order in a proceeding under section 2255.

(2)   A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)   The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

test the legality of his detention." 28 U.S.C. § 2255. "We refer to this section of § 2255 as the 'savings clause,' " or the "escape hatch." *Hernandez*, 204 F.3d at 864 n.2; *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006) (internal quotation marks omitted). If a prisoner's claims qualify for the escape hatch of § 2255, the prisoner may challenge the legality of a sentence through a § 2241 petition in the custodial court. *Hernandez*, 204 F.3d at 865.

B

In February 1992, Harrison filed his first § 2255 habeas petition in the sentencing court. The sentencing court denied the motion as procedurally barred due to Harrison's failure to pursue his direct appeal. We affirmed the district court's ruling in November 1994.

In August 1999, Harrison filed a second habeas petition in the sentencing court to vacate his sentence under § 2255. The judges of the Southern District of California recused themselves, and we assigned the case to Judge James K. Singleton, of the District of Alaska.

While this petition was pending, the Supreme Court issued its opinion in *Jones v. United States*, 529 U.S. 848 (2000), holding that the phrase "used in an activity affecting commerce" for purposes of § 844(i) required "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones*, 529 U.S. at 855. Applying this definition, the Court held that a defendant could not be convicted of violating § 844(i) for damaging a private residence "owned and occupied . . . for everyday family living." *Id.* at 859.

In September 2000, Judge Singleton dismissed Harrison's petition on the ground that it was a second or successive motion, requiring Harrison to obtain a certificate pursuant to

§ 2255 before he could file it. We denied Harrison's request for certification of this petition in May 2001.

In July 2001, Harrison filed a petition pursuant to § 2241 in the sentencing court seeking to vacate his sentence in light of *Jones v. United States*. Without analyzing whether Harrison could file a § 2241 petition pursuant to the savings clause of § 2255, the sentencing court dismissed Harrison's petition for lack of jurisdiction.

Harrison thereupon filed his § 2241 petition in the custodial court. As required by *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000), the custodial court first considered whether Harrison's petition should be deemed to be a petition under § 2241 or a motion under § 2255. Because Harrison contested the legality of his sentence in light of *Jones*, he had to raise his claim by a § 2255 motion unless he met the criteria for the escape hatch.

Upon reviewing Harrison's § 2241 petition, the custodial court determined that Harrison had failed to establish that his remedies under § 2255 were inadequate or ineffective, and therefore held that Harrison's petition could not be filed under § 2241. Accordingly, the custodial court deemed Harrison's petition to be a motion under § 2255. Because jurisdiction over such a motion would lie only in the sentencing court, the custodial court transferred the case to the sentencing court.

After the petition had been transferred to the sentencing court, it was reassigned to Judge Singleton. In May 2003, Judge Singleton denied the petition and issued an order instructing the clerk of the court to close the case and not to accept any further filings from Harrison without a certificate permitting a second or successive petition under § 2255.

In light of this certification requirement, Harrison requested authorization in this court to file a second or successive motion under § 2255. We denied the request "without preju-

dice to presentation of the issues raised in this application through the filing of a 28 U.S.C. § 2241 habeas corpus petition in district court," citing *United States v. Lorentsen*, 106 F.3d 278, 279 (9th Cir. 1997).

This language in our order sent Harrison on a second round of efforts to raise his *Jones* claim. In July 2005, Harrison filed a § 2241 petition in the sentencing court, again raising his *Jones* and ineffective assistance of counsel claims. Pursuant to *Hernandez*, 204 F.3d at 865, the sentencing court first considered whether Harrison's petition was properly brought under § 2241 or § 2255. Consistent with the prior ruling of the custodial court, the sentencing court determined that Harrison could not proceed under § 2241 because Harrison's remedies under § 2255 were not inadequate or ineffective. The sentencing court therefore construed Harrison's petition under § 2241 to be a motion under § 2255. Noting that we had already denied Harrison's application to file a second or successive motion under § 2255, the sentencing court accordingly dismissed Harrison's petition for lack of jurisdiction.

In March 2006, Harrison appealed this second denial of his § 2241 petition. The Ninth Circuit Appellate Commissioner subsequently remanded the case to the sentencing court for the limited purpose of granting or denying a COA under § 2253. In May 2006, the sentencing court denied Harrison's motion requesting a COA. The sentencing court reasoned that it had dismissed Harrison's petition for lack of jurisdiction because Harrison "was not entitled to proceed with habeas relief under § 2241," and no reasonable jurist could have concluded otherwise.

In a July 2006 order, we granted Harrison's subsequent motion for leave to file an oversized request for a COA, noted his prior request for a COA, and also stated that we had not yet determined whether the COA requirement is applicable to an appeal from dismissal of a habeas petition brought in good faith under § 2241 pursuant to the savings clause of § 2255.

Therefore, we directed the parties to brief: (1) whether the COA requirement in § 2253 applied to an appeal from the denial of a § 2241 habeas petition filed by a federal prisoner challenging his conviction or sentence under the savings clause of § 2255, and (2) whether the sentencing court properly dismissed Harrison's § 2241 habeas petition for lack of jurisdiction.

We now have before us Harrison's March 2006 appeal from the denial of his § 2241 petition as well as his motion requesting a COA. We have jurisdiction over the district court's denial of a § 2241 petition pursuant to 28 U.S.C. § 1291, and have jurisdiction over the request for a COA pursuant to § 2253. Fed. R. App. P. 22(b); *see Valerio v. Crawford*, 306 F.3d 742, 763-64 (9th Cir. 2002) (en banc). We review the district court's denial of a habeas petition de novo. *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006).

## II

As a threshold matter, we must determine whether we can consider Harrison's appeal without a COA.

**[1]** Where a petition purportedly brought under § 2241 is merely a "disguised" § 2255 petition, the petitioner cannot appeal from the denial of that petition without a COA. *Porter v. Adams*, 244 F.3d 1006, 1006-07 (9th Cir. 2001). In *Porter*, a petitioner brought a § 2241 petition that, on its face, "raise[d] the same or similar claims that were raised in his original 28 U.S.C. § 2255 motion filed in the district court." *Id.* at 1006. We determined that the petitioner's pleading was merely a successive § 2255 motion disguised as a § 2241 petition. *Id.* at 1007. We concluded that where "[i]t is apparent from the face" of the § 2241 petition that the petitioner "raises previously unsuccessful claims attacking only the legality of his conviction and not the execution of his sentence," the petitioner cannot appeal the denial of a § 2241 petition without a COA. *Id.* Therefore, if Harrison's purported § 2241 petition is

a § 2255 motion in disguise, we lack jurisdiction to consider it absent a COA.

**[2]** However, *Porter* did not address the exceptional case, where the petitioner's pleading qualifies for the escape hatch of § 2255, and can legitimately be brought as a § 2241 petition. As we noted in our July 2006 order, it is an open question in our circuit whether the COA requirement is applicable to an appeal from dismissal of a habeas petition brought in good faith under § 2241. Therefore, we must consider whether we can require a petitioner to obtain a COA as a condition to our exercise of jurisdiction over an appeal of the denial of a § 2241 petition that qualifies for the escape hatch of § 2255.

**[3]** We see no basis for imposing such a requirement. The plain language of § 2253(c)(1) does not require a petitioner to obtain a COA in order to appeal the denial of a § 2241 petition. *Forde v. U.S. Parole Comm'n,* 114 F.3d 878, 879 (9th Cir. 1997). Nor is there any other statutory basis for imposing a COA requirement on legitimate § 2241 petitions. Although state prisoners proceeding under § 2241 must obtain a COA, *see* § 2253(c)(1)(A), there is no parallel requirement for federal prisoners. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23 (1983) (internal quotation marks omitted); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997). In the absence of a statutory COA requirement for federal prisoners bringing legitimate § 2241 petitions, we cannot require one as a condition for our exercise of jurisdiction. "[F]ederal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred," *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358 (1989).[4] Our conclusion that we must

---

[4]The limited exceptions to our duty to exercise our jurisdiction are inapplicable in this situation. *See New Orleans Pub. Serv., Inc.*, 491 U.S. at 358-59.

consider the appeal of a district court's denial of a § 2241 petition that qualifies for the escape hatch of § 2255 and thus is properly before us is consistent with decisions in the Fifth, Tenth and Eleventh Circuits. *Sawyer v. Holder*, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003); *Jeffers v. Chandler*, 253 F.3d 827, 829-30 (5th Cir. 2001); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

This conclusion raises something of a jurisdictional quandary, however. If Harrison's petition is a disguised § 2255 motion, we lack jurisdiction to hear it absent a COA. *Phelps v. Alameda*, 366 F.3d 722, 726 (9th Cir. 2004); *Porter*, 244 F.3d at 1005. If Harrison's petition is a legitimate § 2241 petition brought pursuant to the escape hatch of § 2255, we *must* exercise our jurisdiction to hear it. Because we "retain jurisdiction to determine our jurisdiction," however, we proceed to consider whether the district court was correct in determining that Harrison's pleading, framed as a § 2241 petition, did not qualify for the escape hatch of § 2255. *See Laing v. Ashcroft*, 370 F.3d 994, 999 (9th Cir. 2004).

III

**[4]** We have held that a motion meets the escape hatch criteria of § 2255 "when a petitioner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim." *Stephens*, 464 F.3d at 898 (9th Cir. 2006) (internal quotation marks omitted). In *Stephens*, the petitioner claimed that the district court had failed to instruct the jury that it must unanimously identify the three acts comprising the series of predicate violations to his "continuing criminal enterprise" conviction under 21 U.S.C. § 848. *Stephens*, 464 F.3d at 898. We held that this claim did not become available until the Supreme Court interpreted § 848 as requiring jury unanimity on the predicate offenses in *Richardson v. United States*, 526 U.S. 813 (1999). *Id.* Because *Richardson* was decided several years after the Tenth Circuit had denied the petitioner's first § 2255 motion, we held that

the petitioner never had an unobstructed procedural shot to raise his jury instruction claim. *Id.* Moving on to consider the "actual innocence" prong of the escape hatch, we concluded that the petitioner could not satisfy this requirement and thus could not raise his claim by § 2241 petition. 464 F.3d at 898-99.

Harrison argues that because he is making a claim of actual innocence, and has not had an unobstructed procedural shot at presenting that claim, the district court erred in holding that he did not qualify to bring a petition pursuant to § 2241. Harrison contends that under the Supreme Court's interpretation of § 844(i) in *Jones*, the conduct for which he was convicted no longer violates the statute because the boat and van he destroyed were not used in and did not affect interstate commerce. Therefore, Harrison claims he is actually innocent. Moreover, he contends that he did not have "an unobstructed procedural shot" at presenting his claim because his claim was not available until *Jones* was decided in 2000, years after Harrison's first § 2255 motion in 1992.

The district court rejected this argument, holding that Harrison's procedural shot was not obstructed—he could have raised the argument that the government failed to prove the interstate commerce element of § 844(i) on direct appeal. Although *Jones* had not yet been decided, the district court noted that the same issue had been raised in *United States v. Monholland*, 607 F.2d 1311 (10th Cir. 1979), over ten years before Harrison was sentenced. According to the district court, Harrison's failure to raise this claim was not caused by procedural obstructions, but by his own defaults: Harrison failed to raise this argument on direct appeal, voluntarily dismissed his appeal, and then was procedurally barred from raising the claim in his initial § 2255 motion. Moreover, the district court noted, the ban on raising this claim in second or successive petitions "does not mean that § 2255's remedy was 'inadequate or ineffective.' " *Ivy v. Pontesso*, 328 F.3d 1057, 1061 (9th Cir. 2003). *See also Stephens*, 464 F.3d at 897.

Accordingly, the district court ruled that Harrison was not denied an unobstructed procedural shot to pursue his claim.

**[5]** We agree with the district court. In determining whether a petitioner had an unobstructed procedural shot to pursue his claim, we ask whether petitioner's claim "did not become available" until after a federal court decision. *Stephens*, 464 F.3d at 898. In other words, we consider: (1) whether the legal basis for petitioner's claim "did not arise until after he had exhausted his direct appeal and first § 2255 motion;" and (2) whether the law changed "in any way relevant" to petitioner's claim after that first § 2255 motion. *Ivy*, 328 F.3d at 1060-61.

Harrison argues that the legal basis for his claim did not arise until *Jones* was decided. We disagree with this analysis, because *Jones* did not effect a material change in the applicable law. The Supreme Court first construed the interstate commerce element of § 844(i) in *Russell v. United States*, 471 U.S. 858 (1985). After reviewing the legislative history of this provision, the Court acknowledged that Congress intended "to exercise its full power under the Commerce Clause" to protect business property "as well as some additional property that might not fit that description, but perhaps not every private home." *Id.* at 859, 862. The Court contrasted Congress's intent with the plain language of the statute, stating, "[b]y its terms, however, the statute only applies to property that is 'used' in an 'activity' that affects commerce." *Id.* at 862. The Court concluded that the "rental of real estate is unquestionably such an activity." *Id.*

**[6]** Although *Jones* provided further clarification of the key words identified in *Russell*, and expressly rejected the government's argument that Congress intended to invoke its full authority under the Commerce Clause, it did not materially vary from the statutory construction set forth in *Russell*. The Court noted (as it had in *Russell*) that the statute "contains the qualifying words 'used in' a commerce-affecting activity," *Jones*, 529 U.S. at 854, and interpreted "used" as "most sensi-

bly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.* at 855. Accordingly, the Court held that § 844(i) did not apply to a private, owner-occupied residence. *Russell* had already flagged that private homes might not be covered by § 844(i) even under Congress's expansive definition. *See* 471 U.S. at 862. Stressing that its holding in *Jones* was consistent with *Russell*, the Court noted that "*Russell* did not rest its holding on the expansive interpretation advanced by the Government both in *Russell* and in this case." *Jones*, 529 U.S. at 856 n.8.

**[7]** We decided two cases interpreting the interstate commerce component of § 844(i) before Harrison filed his direct appeal in 1989 and his first § 2255 motion in 1992, both of which were consistent with *Russell* and *Jones*. *See United States v. Andrini*, 685 F.2d 1094 (9th Cir. 1982); *United States v. Keen*, 508 F.2d 986, 990 (9th Cir. 1974). In *Keen*, we held that a boat was covered by § 844(i) because "the boat was used in commercial fishing" and such commercial fishing "is an industry affecting interstate commerce." *Keen*, 508 F.2d at 990. Although *Andrini* quoted legislative history and noted that the term "affecting (interstate or foreign) commerce (in 844(i)) represents the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," we emphasized that the "building or property" covered by § 844(i) must have "some relationship to an activity of commercial nature." *Andrini*, 685 F.2d at 1095-96 (internal citations and quotation marks omitted). Moreover, reviewing the decisions of other circuits, we distinguished *Monholland* on the ground that the property at issue in *Monholland* was not of a commercial nature. *Id.* at 1096; *see Monholland*, 607 F.2d at 1315-16 (the government failed to prove the "use" prong of § 844(i) where the truck the defendants conspired to blow up was not actively used in interstate commerce).

**[8]** Thus, in both *Keen* and *Andrini*, we emphasized the requirement that the property at issue be "commercial" in

nature. These cases, together with the Supreme Court's decision in *Russell*, provided an ample basis for Harrison to argue that the government must prove a nexus between the property destroyed and an activity of commercial nature. We cannot say that Harrison's claim "did not become available until after" the Supreme Court's decision in *Jones*. *Stephens*, 464 F.3d at 898. In fact, five years before *Jones* was decided, another defendant presented this court with precisely the same jurisdictional argument Harrison makes today, and we reversed her conviction under § 844(i). *See United States v. Pappadapoulos*, 64 F.3d 522 (9th Cir. 1995) (*reasoning partially abrogated by Jones*, 529 U.S. at 856-58). Accordingly, the case law, as it stood at the time that Harrison pleaded guilty, failed to prosecute his direct appeal, and filed his first motion under § 2255, invited the very argument that Harrison attempts to raise many years later through collateral attack.

While *Jones* gave additional encouragement for defendants to argue that property at issue in a § 844(i) case was not "used" in interstate commerce, we cannot say such further support constitutes a *change* in the law creating a previously unavailable legal basis for petitioner's claim. *See Ivy*, 328 F.3d at 1060. Nor did the ruling in *Jones* so change the law that it clearly placed Harrison's conduct outside the sweep of § 844(i). Harrison had stipulated that the van was "driven and used in the commercial business," which would be sufficient to bring the property within the scope of § 844(i) under *Jones*. At most, therefore, *Jones* could have given Harrison additional encouragement to argue that the boat damaged by Harrison was not used in an activity affecting commerce, an issue not specifically resolved by *Jones*.

**[9]** Accordingly, we conclude that Harrison cannot establish that he "has not had an unobstructed procedural shot" at presenting his claim, *Stephens*, 464 F.3d at 898 (internal quotation marks omitted), and thus cannot qualify for the escape hatch. Because Harrison has not demonstrated that "the remedy by motion [under § 2255] is inadequate or ineffective to

test the legality of his detention," we affirm the district court's determination that Harrison could not bring his claim as a § 2241 petition.

## IV

Because Harrison has not established that his petition is a legitimate § 2241 petition brought pursuant to the escape hatch of § 2255, we do not have jurisdiction under § 2241 to hear his appeal. *See United States v. Reyes*, 358 F.3d 1095, 1097 (9th Cir. 2004) (per curiam). Harrison's pleading must be characterized as a disguised § 2255 motion. As the district court noted, because Harrison has filed multiple § 2255 motions, he cannot proceed with a successive § 2255 motion without an order of this court authorizing this successive petition. 28 U.S.C. § 2244(b)(3)(A). As we held in our order of June 21, 2005, and as Harrison concedes, he is not entitled to file a successive § 2255 motion. His claim under *Jones* does not present "newly discovered evidence" or " a new rule of constitutional law." *Id.* § 2255; *see United States v. Prevatte*, 300 F.3d 792, 798 (7th Cir. 2002); *In re Dorsainvil*, 119 F.3d 245, 247-48 (3d Cir. 1997). Accordingly, we affirm the decision of the district court dismissing Harrison's petition for lack of jurisdiction.[5]

**AFFIRMED**

---

[5]We dismiss Harrison's request for a COA as moot.