**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VAATAUSILI MARK ALAIMALO,
      *Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA; J. L.
NORWOOD,
      *Respondents-Appellees,*

No. 08-56349

D.C. No.
2:08-cv-01090-GPS-
JTL

ORDERS
AMENDING
OPINION AND
DISSENT AND
AMENDED
OPINION AND
DISSENT

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued May 7, 2010
Submitted February 28, 2011
Pasadena, California

Filed February 28, 2011
Amended June 20, 2011

Before: Betty B. Fletcher and Richard A. Paez, Circuit
Judges, and Edward R. Korman, Senior District Judge.*

Opinion by Judge B. Fletcher;
Dissent by Judge Korman

*The Honorable Edward R. Korman, Senior District Judge for the U.S.
District Court for Eastern New York, Brooklyn, sitting by designation.

**COUNSEL**

Ramiah Shanti Brien, Oakland, California, for the petitioner-appellant.

Michael J. Raphael and Rosalind Wang, Office of the United States Attorney, Los Angeles, California, for the respondent-appellee.

**ORDERS**

The opinion filed on February 28, 2011 is amended as follows:

1. On page 2944 of the slip opinion, 636 F. 3d at 1098, delete the following sentence:

> We conclude that neither doctrine bars consideration of Alaimalo's petition because failure to entertain his claim of actual innocence would constitute manifest injustice.

2. Replace that sentence with:

> We conclude that neither doctrine bars consideration of Alaimalo's petition.

3. On page 2944 of the slip opinion, 636 F.3d at 1098, delete the following sentence:

> Even if the government had met its burden, we conclude that the abuse of the writ doctrine would not bar reconsideration of Alaimalo's claim because failure to entertain his claim would result in a fundamental miscarriage of justice.

4. Replace that sentence with:

> Therefore, we do not reach this issue.

5. On page 2947 of the slip opinion, 636 F.3d at 1100, delete the following sentence:

> We REVERSE and REMAND to the district court with instructions to issue the writ of habeas corpus, vacate Alaimalo's convictions for importation, and resentence Alaimalo on the remaining counts.

6. Replace that sentence with:

> We REVERSE and REMAND to the district court with instructions to issue the writ of habeas corpus, and vacate Alaimalo's convictions for importation.

The dissent filed on February 28, 2011 is amended as follows:

1.  On page 2961 of the slip opinion, 636 F.3d at 1108, delete the following four sentences:

> Although it suggests that neither of these doctrines are applicable here, it avoids resolving that issue because it concludes that both of those doctrines contain an exception where relief is necessary to remedy a "fundamental miscarriage of justice," Majority Op. at 1098, or a "manifest injustice," id. at 1098-99. The majority holds that this exception to both doctrines is satisfied here. I disagree.

> I first address this threshold issue, because it relates both to the law of the case and the abuse of the writ doctrines.

2.  Replace those sentences with the following:

> The majority holds that the law of the case doctrine is not applicable here because "failure to entertain Alaimalo's claim would result in manifest injustice." Majority Op. at 1099. And the majority rejects the abuse of the writ doctrine on the ground that the government bears the burden to raise it and failed to do so.

> I first address the issue of manifest injustice, because it relates both to the law of the case and the abuse of the writ doctrines, although the majority does not rely on it with respect to the latter.

**OPINION**

B. FLETCHER, Circuit Judge:

Vaatausili Mark Alaimalo, a federal prisoner, appeals the dismissal of his habeas corpus petition brought under 28 U.S.C. § 2241. We first must determine whether we have jurisdiction to consider this petition, brought without a certificate of appealability ("COA"). Alaimalo has demonstrated both actual innocence and that his actual innocence claim was not available to him on direct appeal or when he filed his first motion for habeas relief under 28 U.S.C. § 2255. We conclude that we have jurisdiction to consider his petition for habeas relief brought under 28 U.S.C. § 2241 without a COA.

We must also determine whether we should give preclusive effect, under either the law of the case or abuse of the writ doctrines, to a prior panel's denial on the merits of Alaimalo's October 2006 § 2241 petition. Because we hold that Alaimalo is actually innocent and that failing to consider his habeas petition would result in manifest injustice, we decline to do so.

**FACTS**

Alaimalo was convicted in 1997 of three counts of importing methamphetamine from California to Guam in violation of 21 U.S.C. §§ 952(a) & 960 and three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a). For each of his three importation convictions, he received a life sentence; for the three possession convictions, he received two life sentences and one sentence of 360 months. All of his sentences run concurrently.

In the § 2241 habeas petition before this panel, Alaimalo claims that he is actually innocent of importing methamphetamine from California to Guam. He argues that transporting drugs from one location within the jurisdiction of the United

States (California) to another location within the jurisdiction of the United States (Guam) was not "importation" prohibited by 21 U.S.C. § 952(a).

Alaimalo first raised this claim of actual innocence on direct appeal. The Ninth Circuit affirmed Alaimalo's convictions and sentences in an unpublished decision. *See United States v. Alaimalo*, No. 97-10454, 1998 WL 852911 (9th Cir. Dec. 2, 1998). The court did not address Alaimalo's claim that his conduct did not qualify as importation. *Id.*

In 1999, Alaimalo timely filed a motion for habeas relief under 28 U.S.C. § 2255. Appearing pro se, Alaimalo argued that his trial and appellate counsel were constitutionally ineffective. The district court denied the motion on the merits and the Ninth Circuit affirmed in 2002. *See United States v. Alaimalo*, 313 F.3d 1188 (9th Cir. 2002).

In 2003, a Ninth Circuit en banc court held that transporting drugs from one location within the United States (California) to another (Guam) does not constitute importation within the meaning of 21 U.S.C. § 952(a). *United States v. Cabaccang*, 332 F.3d 622, 623 (9th Cir. 2003) (en banc). *Cabaccang* overruled two previous decisions holding that transporting drugs over or through international waters constituted importation. *See Guam v. Sugiyama*, 846 F.2d 570, 572 (9th Cir. 1988); *United States v. Perez*, 776 F.2d 797, 801 (9th Cir. 1985); *see also Cabaccang* at 634-35.

In March 2005, relying on *Cabaccang,* Alaimalo filed a habeas petition under 28 U.S.C. § 2241 in the Eastern District of California. He argued that he was actually innocent of the importation charges. The court found that Alaimalo was actually innocent, but that he could not proceed under § 2241 because he could have raised his innocence claim at sentencing, on direct appeal, and in his first § 2255 motion. The district court dismissed the petition for lack of jurisdiction, and Alaimalo's appeal to the Ninth Circuit was dismissed in an

unpublished order as untimely. *Alaimalo v. Shultz*, No. 06-15658 (9th Cir. June 9, 2006).

In October 2006, Alaimalo filed a second § 2241 petition in the Central District of California. Appearing pro se, he raised, among other claims, an actual innocence claim based on *Cabaccang*. The district court dismissed his petition for lack of jurisdiction, holding that Alaimalo could have raised his claims in an earlier § 2255 motion. Alaimalo appealed. In September 2008, in a three paragraph unpublished disposition, the Ninth Circuit affirmed the dismissal of Alaimalo's October 2006 § 2241 petition. *See Alaimalo v. United States*, 317 F. App'x. 619 (9th Cir. 2008) ("*Alaimalo II*").

In February 2008, while *Alaimalo II* was pending, Alaimalo submitted another § 2241 habeas petition raising the *Cabaccang* argument to the Central District of California. The district court dismissed the petition for lack of jurisdiction. Alaimalo filed a timely notice of appeal. After the district court declined to issue a COA, the Ninth Circuit resumed jurisdiction and the appeal was submitted to this panel.

## DISCUSSION

### I. The Court Has Appellate Jurisdiction Despite the Lack of a Certificate of Appealability

[1] At the threshold, we must determine whether we have jurisdiction to consider Alaimalo's appeal from the dismissal of his February 2008 petition without a COA.[1] As a general

---

[1]We disagree with the dissent's conclusion that 28 U.S.C. § 2244(a) divests the district court of jurisdiction to consider a successive habeas petition brought under § 2241 unless the petitioner has obtained prior-approval pursuant to § 2244(b)(3). We agree with the Tenth Circuit's conclusion that, by its terms, § 2244(a) "does not apply to claims that may be brought under § 2255." *See Stanko v. Davis*, 617 F.3d 1262, 1269 (10th Cir. 2010). As we will discuss, because Alaimalo's § 2241 petition is permitted by the "escape hatch" of 28 U.S.C. § 2255(e), his failure to seek prior-certification from the Court of Appeals did not divest the district court of jurisdiction in this case.

rule, "[section] 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of his detention." *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003); *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000). To challenge a sentence that was imposed "in violation of the Constitution or laws of the United States," a federal prisoner may "move the court which imposed the sentence to vacate, set aside or correct the sentence" pursuant to 28 U.S.C. § 2255. A prisoner may appeal the denial of a § 2255 motion only if the Ninth Circuit or the district court issues a COA. 28 U.S.C. § 2253(c)(1)(B).

**[2]** However, a federal prisoner may file a habeas petition under § 2241 if the remedy provided by § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C § 2255(e); *see also Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008). This is called the "savings clause" or "escape hatch" of § 2255. *Harrison*, 519 F.3d at 956. A petition meets the escape hatch criteria where a petitioner "(1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim." *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006) (internal quotation marks omitted).

Where a petition purportedly brought under § 2241 is merely a "disguised" § 2255 motion, the petitioner cannot appeal the denial of that petition absent a COA; a valid § 2241 petition, however, *must* be considered, even absent a COA. *Harrison*, 519 F.3d at 958-59. Because we "retain jurisdiction to determine our jurisdiction," we proceed to consider whether "the district court was correct in determining that [Alaimalo's] pleading, framed as a § 2241 petition, did not qualify for the escape hatch of § 2255." *Harrison,* 519 F.3d at 959 (quotation marks omitted). We review the dismissal of a habeas petition de novo. *Ivy*, 328 F.3d at 1059.

## A.   Actual Innocence

**[3]** To establish actual innocence for the purposes of habeas relief, a petitioner "must demonstrate that, in light of

all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Stephens*, 464 F.3d at 898 (quoting *Boulsey v. United States*, 523 U.S. 614, 623 (1998)). A petitioner is actually innocent when he was convicted for conduct not prohibited by law. *See Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (summarizing the tests employed by the circuit courts to determine actual innocence).

[4] Alaimalo has made a showing of actual innocence. He was convicted of importing methamphetamine from California to Guam, which *Cabaccang* held is not a crime. *Cabaccang,* 332 F.3d at 637. Further, we note that the government does not contest Alaimalo's actual innocence.

## B. Prior Opportunities to Raise Actual Innocence Claim

[5] We turn to the question of whether Alaimalo's actual innocence claim was unavailable to him during his direct appeal and his first § 2255 motion. In making this determination, we consider "(1) whether the legal basis for petitioner's claim did not arise until after he had exhausted his direct appeal and first § 2255 motion; and (2) whether the law changed in any way relevant to petitioner's claim after that first § 2255 motion." *Harrison*, 519 F.3d at 960 (internal quotation marks omitted).

[6] An intervening court decision must "effect a material change in the applicable law" to establish unavailability. *Harrison*, 519 F.3d at 960. *See also In re Davenport*, 147 F.3d 605, 607, 610 (7th Cir. 1998) (holding that the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), effected a material change in the law because the circuit previously held that accessability of a firearm was enough to support an inference that a firearm was used in a drug crime, whereas *Bailey* required active employment of the firearm); *Triestman v. United States*, 124 F.3d 361 (2d Cir.

1997); *In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997). In contrast, a decision that simply "provides further clarification" of the statute of conviction without "materially vary[ing] from the statutory construction set forth" in previous case law does not effect such a change. *See Harrison*, 519 F.3d at 960 (holding that the Supreme Court's decision in *Jones v. United States*, 529 U.S. 848 (2000), did not effect a material change in the law but only clarified a prior Supreme Court decision and two Ninth Circuit opinions consistent with *Jones*'s holding).

**[7]** We hold that *Cabaccang* effected a material change in the law applicable to Alaimalo's case, such that the legal basis for his actual innocence claim did not become available until *Cabaccang* was decided. Prior to *Cabaccang*, the Ninth Circuit twice held that transporting drugs between Guam and another United States territory constituted "importation" because it required traveling through international waters or airspace. *See Sugiyama*, 846 F.2d at 572; *Perez*, 776 F.2d at 801. *Cabaccang* expressly overruled settled law. 332 F.3d at 635 ("To the extent that *Sugiyama* and *Perez* address the transport of drugs through international airspace on a nonstop domestic flight, they are overruled.").

**[8]** Alaimalo could not have raised his claim of innocence in an effective fashion prior to *Cabaccang*, at which point he had already exhausted his direct appeal and § 2255 motion. *See Triestman* 124 F.3d at 379; *Davenport*, 147 F.3d at 610; *contra Harrison*, 519 F.3d at 961 (noting that case law at the time of petitioner's direct appeal and first § 2255 "invited the very argument" raised in the purported § 2241 petition); *Abdullah v. Hedrick*, 392 F.3d 957, 958, 963 (8th Cir. 2004) (holding that where petitioner's § 2255 motion was still pending at the time the Supreme Court effected a material change in the applicable law, he had an unobstructed chance to raise his actual innocence claim in the pending petition).

The government argues that Alaimalo's actual innocence claim was available after 1996, when the First Circuit held

that transporting drugs over international waters did not constitute "importation" within the meaning of 21 U.S.C. § 952(a). *See United States v. Ramirez-Ferrer*, 82 F.3d 1131, 1144 (1st Cir. 1996) (en banc). We disagree. For the purposes of determining whether a claim was unavailable under § 2241, we look to whether controlling law in *this* circuit foreclosed petitioner's argument. *See, e.g., In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) (a claim is not available when "settled law of *this circuit* or the Supreme Court established the legality of conviction . . . .") (emphasis added); *Davenport*, 147 F.3d at 610 (holding that when "the law of the circuit was so firmly against him," petitioner did not have to raise an issue to preserve it as a basis for collateral attack later on).

The mere possibility that the Ninth Circuit would overrule its previous holdings en banc did not make Alaimalo's actual innocence claim "available" to him for the purposes of § 2241. If it did, there would be a legal basis for *any* actual innocence claim that is currently foreclosed by binding Ninth Circuit law, as there is always the infinitesimally small possibility of sudden en banc reversal.[2] Requiring a petitioner to raise all theoretically possible actual innocence claims in his first § 2255 motion would put an unreasonable burden on petitioners and the courts. "It would just clog the judicial pipes to require defendants, on pain of forfeiting all right to benefit from future changes in the law, to include challenges to settled law in their briefs on appeal and in postconviction filings." *Davenport*, 147 F.3d at 610.

**[9]** In sum, because Alaimalo did not have an unobstructed chance to present his innocence claim in his first § 2255 motion, he may now raise that claim in a § 2241 petition without a certificate of appealability. We have jurisdiction over

---

[2]Of the 4,337 cases decided on the merits by the Ninth Circuit Court of Appeals in 1998 (the year this court affirmed Alaimalo's convictions on direct appeal), only 16 were heard en banc.

Alaimalo's appeal of the dismissal of his February 2008 § 2241 petition.

## II.  Neither the Abuse of the Writ Doctrine Nor the Law of the Case Precludes Consideration of Alaimalo's Successive § 2241 Petition

We next consider whether this court's denial of Alaimalo's second § 2241 petition in *Alaimalo II* bars consideration of his subsequent § 2241 petition for habeas relief. We consider two common law doctrines that may apply here: abuse of the writ and the law of the case. We conclude that neither doctrine bars consideration of Alaimalo's petition.

**[10]** The doctrine of abuse of the writ generally "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 538 (9th Cir. 1998) (en banc), *overruled in part on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003). Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Sanders v. United States*, 373 U.S. 1, 15 (1963). The government bears the burden of pleading abuse of the writ, *McCleskey*, 499 U.S. at 477, but it did not do so here. Therefore, we do not reach this issue.

"The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996). An appellate court is not required to follow the law of the case; whether to do so is discretionary. *United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010) (citing *Messinger v. Anderson*, 225 U.S.

436, 444 (1912). According to the doctrine, however, a prior decision should be followed unless (1) the decision is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different evidence was adduced at a subsequent trial. *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995).

Although it is clear that the law of the case doctrine applies to subsequent proceedings on the same habeas petition, this circuit has not applied it to claims in successive habeas petitions. *Compare Phelps v. Alameida*, 569 F.3d 1120, 1140 n.23 (9th Cir. 2009) (recognizing that a previous panel's review of the same habeas petition is the law of the case) *and United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996) (same), *with Barapind v. Reno*, 225 F.3d 1100, 1110-12 (9th Cir. 2000) (considering the applicability of the abuse of the writ doctrine, not the law of the case, to a habeas petition brought under § 2241), *and Farmer v. McDaniel*, 98 F.3d 1548, 1557-58 (9th Cir. 1996) (applying abuse of the writ to a third habeas petition), *abrogated on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000). We also note that there is a split among our sister circuits as to whether to apply the law of the case to successive habeas petitions. *Compare Rosales-Garcia v. Holland,* 322 F.3d 386, 398 n.11 (6th Cir. 2003) (en banc) ("Whether successive habeas petitions constitute stages in a single, continuing lawsuit is a question that should be carefully considered . . . [We] think it likely that each habeas petition is a separate and distinct case."), *and Lacy v. Gardino*, 791 F.2d 980, 984 (1st Cir. 1986) ("It is by no means clear that these two [successive] habeas petitions are part of the same case"), *with Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991) (applying the law of the case doctrine to successive habeas petitions) *and Raulerson v. Wainwright*, 753 F.2d 869, 875 (11th Cir. 1985) (same).

**[11]** Ultimately, we need not resolve whether the law of the case applies to successive petitions for habeas relief under

§ 2241. Even assuming that the law of the case applies here, we do not follow *Alaimalo II*, which was clearly wrong as a matter of law, because failure to entertain Alaimalo's claim would result in manifest injustice. The Supreme Court has made clear that federal courts must be mindful of the "ends of justice" before dismissing a successive habeas petition. *See Kuhlmann v. Wilson*, 477 U.S. 436, 451 (1986) (plurality opinion, Powell, J., joined by Burger, Rehnquist, and O'Connor, J.J.); *id.* at 468-69 (Brennan, J., dissenting); *id.* at 476-77 (Stevens, J., dissenting). Alaimalo's convictions and punishment on the importation charges "are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice." *Boulsey*, 523 U.S. at 626 (quoting *Davis v. United States*, 417 U.S. 333, 346-347 (1974)) (quotation marks omitted); *see also Engle v. Isaac*, 456 U.S. 107, 135 (1982) (stating that the principles of comity and finality "must yield to the imperative of correcting a fundamentally unjust incarceration").

It is probable that vacating Alaimalo's convictions for importation of methamphetamine will not reduce the length of his confinement; vacating these convictions, however, removes the possibility that he will be subject to their adverse collateral consequences. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985) ("[A] separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.") (emphasis in original); *Spencer v. Kemna*, 523 U.S. 1, 12 (1998) (presuming significant collateral consequences in the context of criminal convictions); *United States v. Kincaid*, 898 F.2d 110, 112 (9th Cir. 1990). *Cf. Holloway v. United States*, 393 F.2d 731, 732 (9th Cir. 1968) ("Coram nobis must be kept available as a post-conviction remedy to prevent 'manifest injustice' even where the removal of a prior conviction will have little present effect on the petitioner.").

**[12]** We REVERSE and REMAND to the district court with instructions to issue the writ of habeas corpus, and vacate Alaimalo's convictions for importation.

---

KORMAN, District Judge, dissenting:

This appeal from the denial of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, however decided, will have no practical consequence. While the majority orders the district court to issue the writ, it will not result in the release of petitioner, a serial drug dealer, who is serving a life sentence for distribution of methamphetamines. The life sentence was mandatory because of two prior drug convictions in California. The judgment of conviction for the offense on which he is serving the foregoing life sentence and the judgments of conviction for the predicate offenses are final and concededly not subject to challenge.

Nevertheless, the majority orders the district court to grant the petition with respect to three counts of importing methamphetamines into the United States from Guam—a ground for relief that was considered and rejected in two prior petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner did not timely file an appeal from the denial of his first petition, and the appeal was dismissed. *Alaimalo v. Shultz*, No. 06-15658 (9th Cir. June 9, 2006). The denial of his second petition was unanimously affirmed in an unpublished memorandum that expressly "note[d] that . . . even if Alaimalo were successful in his actual innocence claim, his life sentence would not be affected." *Alaimalo v. United States*, 317 F. App'x 619, 620 (9th Cir. 2008). In sum, while we may all agree that "the principle[ ] of . . . finality 'must yield to the imperative of correcting a fundamentally unjust incarceration,' " Majority Op. at 8334 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)), the writ the majority orders the district

court to issue on his fourth § 2241 petition is a meaningless piece of paper that will provide Alaimalo with no relief.

A holding having no practical effect would not normally invite a dissenting opinion. Nevertheless, the holding of the majority that a habeas corpus petitioner may commence an unending number of successive petitions pursuant to 28 U.S.C. § 2241 until he succeeds, even where success amounts to nothing, makes bad law in an easy case. Such a precedent should not go unchallenged.

## BACKGROUND

In *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (*en banc*), by a six to five vote, over a compelling dissenting opinion of Judge Kozinski, this court overruled two previous panel decisions, *Guam v. Sugiyama*, 846 F.2d 570 (9th Cir. 1988), and *United States v. Perez*, 776 F.2d 797 (9th Cir. 1985), and held that transporting controlled substances over international waters by plane from Guam to the continental United States did not constitute the importation of a controlled substance. Petitioner here, Vaatausili Alaimalo, had raised this issue on his direct appeal from the judgment of conviction. The conviction was affirmed, without discussion of the issue, presumably because of the then-binding Ninth Circuit precedent. *United States v. Alaimalo*, No. 97-10454, 1998 WL 852911 (9th Cir. Dec. 2, 1998). Alaimalo then filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction on a number of grounds, although not on the ground that his conviction for three counts of conspiracy to import methamphetamine into the United States was invalid.

I pause here to provide the overlapping chronology of that challenge and the *Cabaccang* appeal, because it provides necessary background relevant to a discussion of one of the principal issues on this appeal. Alaimalo filed his § 2255 motion on December 2, 1999, eighteen days before the first of the three *Cabaccang* defendants filed his brief on appeal raising

the issue on which they would ultimately prevail. The petition was denied on February 15, 2000. *Alaimalo v. United States*, No. 99-cv-106 (D. Guam Feb. 15, 2000). On July 5, 2001, while Alaimalo's appeal was pending, we affirmed the conviction in *Cabaccang* on all issues except one sentencing issue not relevant here. *United States v. Cabaccang*, 16 F. App'x 566 (9th Cir. 2001).

Subsequently, apparently *sua sponte*, we ordered the parties to address the issue whether the case should be heard *en banc* with respect to whether transporting drugs from California to Guam constituted importation within the meaning of 21 U.S.C. § 952. This order was entered on August 2, 2002, shortly after we had filed a supplemental memorandum addressing the one issue left unresolved in the earlier order affirming the conviction. *United States v. Cabaccang*, 36 F. App'x 234 (9th Cir. 2002). Then, on November 6, 2002, two days after Alaimalo's appeal was argued, an order was entered directing that the *Cabaccang* case be reheard *en banc*. *United States v. Cabaccang*, No. 98-10203 (9th Cir. Nov. 6, 2002) (order granting *en banc* rehearing). We affirmed the denial of Alaimalo's petition on December 20, 2002, *United States v. Alaimalo*, 313 F.3d 1188 (9th Cir. 2002), eleven days before the *en banc* hearing in *Cabaccang*. Coincidentally, Alaimalo was represented on his appeal by Sarah Courageous, the attorney who represented Roy Cabaccang, one of the defendants in that case. Nevertheless, she did not file any motion on Alaimalo's behalf seeking to stay the proceedings in his appeal pending the outcome of the *en banc* hearing in *Cabaccang*.

Alaimalo filed his first petition for habeas corpus pursuant to 28 U.S.C. § 2241 in March 2005. The district court denied the petition on the ground that Alaimalo could have raised the *Cabaccang* issue in his previous § 2255 petition. *Alaimalo v. Shultz*, No. 05-cv-300 (E.D. Cal. Sept. 29, 2005). Consequently, he could not take advantage of § 2255(e), which compels a federal prisoner to file a collateral attack on his

conviction pursuant to § 2255, unless the remedy there provided was "inadequate or ineffective to test the legality of his detention." The latter clause is known as the so-called "escape hatch," which permits a prisoner to file an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Alaimalo's appeal of the denial of his first petition was dismissed on the ground that it was not timely filed. *Alaimalo v. Shultz*, No. 06-15658 (9th Cir. June 9, 2006). Undeterred, on October 27, 2006, Alaimalo filed a second petition for a writ of habeas corpus pursuant to § 2241 raising the same ground as his first petition. This second petition was likewise denied on the same ground as the first. *Alaimalo v. United States*, No. 06-cv-6872 (C.D. Cal. Sept. 25, 2007). This time, Alaimalo filed a timely appeal. A panel composed of Judges Tashima, Silverman and N.R. Smith unanimously affirmed in an unpublished memorandum. *Alaimalo v. United States*, 317 F. App'x 619 (9th Cir. 2008). Specifically addressing Alaimalo's argument on appeal, the panel held:

> Alaimalo contends that the district court erred in failing to address on the merits his claim that under *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (*en banc*), he is actually innocent of importation because the methamphetamine involved in the offenses had traveled inside United States territory between California and Guam. The district court correctly concluded that 28 U.S.C. § 2255 was not an inadequate or ineffective remedy so as to allow Alaimalo to proceed under § 2241. *See Harrison v. Ollison*, 519 F.3d 952, 959 (9th Cir. 2008) (stating that § 2255 escape hatch criteria met when petitioner claims actual innocence and he has not had unobstructed procedural shot at presenting that claim). We note that, as stated in the answering brief, even if Alaimalo were successful in his actual innocence claim, his life sentence would not be affected.

*Id.* at 620.

While that appeal was pending, Alaimalo filed a third petition pursuant to § 2241 on September 27, 2007. This petition made no mention of the *Cabaccang* argument. The petition was dismissed for lack of jurisdiction, *Alaimalo v. Norwood*, No. 07-cv-6313 (C.D. Cal. May 9, 2008), and we denied a motion for a certificate of appealability, *Alaimalo v. Norwood*, No. 08-56128 (9th Cir. Apr. 1, 2009). Finally, before his appeal from his second § 2241 petition was decided and before his third petition was denied by the district court, Alaimalo filed his fourth petition pursuant to § 2241, again raising the *Cabaccang* issue, and which is the subject of this appeal.

## DISCUSSION

The foregoing chronology spares the reader any discussion of the numerous motions pursuant to § 2255 and Rule 60(b) that Alaimalo filed while he was bombarding various district court judges with his § 2241 petitions. Nevertheless, it provides a sufficient backdrop for the threshold issues presented in this case, namely, whether Alaimalo could raise the *Cabaccang* issue in a petition for a writ of habeas corpus pursuant to § 2241 and whether he could continue to file successive petitions after his initial petition was denied—a ruling from which he failed to take a timely appeal.

### I.   The Jurisdiction of the District Court

I address first the issue of the jurisdiction of the district court to consider Alaimalo's third successive petition without a certificate issued by the Court of Appeals authorizing him to do so. While the issue is "not free from doubt," *Wofford v. Scott*, 177 F.3d 1236, 1241(11th Cir. 1999), I accept for present purposes the majority's holding that Alaimalo was entitled to file *a* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without obtaining such a certificate. This he has already done. The issue here turns on the jurisdiction of the district court to entertain his *fourth* petition raising the

same issue as two of his previous petitions, without a certificate authorizing its filing. Section 2244 provides that:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, *except as provided in section 2255.*

28 U.S.C. § 2244(a) (emphasis added).

On its face and subject to the "except clause," § 2244(a) would appear to grant a district judge discretion to decline a successive application for a writ of habeas corpus, although it does not compel him to do so. Indeed, the Supreme Court so held in *Sanders v. United States* 373 U.S. 1, 12 (1963), although it did so in the context of an earlier version of § 2244(a), amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which did not contain the "except as provided in section 2255" clause. Instead, the discretion of the district court to decline to entertain a second or successive petition raising the same claim was conditioned on a finding that "the ends of justice" would not be served by a consideration of the merits of the petition. 28 U.S.C. § 2244(a) (1994) (amended 1996).

The specific provision of AEDPA that deleted the "ends of justice" clause in § 2244(a), expressly stated that it was making a "conforming amendment" to § 2244(a) to add a cross-reference to § 2255. *See* AEDPA, 104 P.L. 132, § 106(a), 110 Stat. 1214, 1220 (1996). Significantly, AEDPA amended § 2255 to delete a provision, comparable to the opening clause of § 2244(a), which gave the sentencing court discretion to decline to "entertain a second or successive petition for similar relief on behalf of the same prisoner," and it added the

requirement of a certificate of authorization for second or subsequent petitions, contained in 28 U.S.C. § 2255(h). *See* AEDPA, 104 P.L. 132, § 105, 110 Stat. 1214, 1220 (1996).

These changes suggest that Congress intended to compel a district judge to entertain a second or successive application pursuant to § 2241 that challenges a judgment of conviction only when the petitioner had obtained a certificate of authorization of the kind that § 2255(h) requires as a condition to the filing of a second or successive petition pursuant to that section. Moreover, the fact that § 2255(h) applies by its terms to successive motions brought pursuant to § 2255 is not determinative because Congress incorporated the certificate of authorization requirement by reference in the "except as provided" clause of § 2244(a).

A contrary holding, which would allow the filing of a second or successive challenge to a judgment of conviction pursuant to § 2241, without a certificate of authorization, would lead to an extraordinarily anomalous, if not absurd, result. This is so because the normal, if not exclusive, procedure for a federal prisoner to challenge the validity of a judgment of conviction is by a motion pursuant to § 2255. A second or successive § 2255 petition may not be considered by the district court unless petitioner obtains a certificate authorizing the district court to do so. 28 U.S.C. § 2255(h). The scope of the § 2241 remedy, as it relates to challenges to the validity of a judgment of conviction, is the same as the scope of the § 2255 remedy. *Compare* 28 U.S.C. § 2241(c)(3) *with* 28 U.S.C. § 2255(b); *and see Kinder v. Purdy*, 222 F.3d 209, 214 (5th Cir. 2000); *Wofford*, 177 F.3d at 1239. Indeed, the Supreme Court has held that § 2255 "was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." *Hill v. United States*, 368 U.S. 424, 427 (1962). "[T]he sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same

rights in another and more convenient forum." *United States v. Hayman*, 342 U.S. 205, 219 (1952). Under these circumstances, there would be no logical reason for Congress to distinguish between § 2255 motions and § 2241 habeas corpus applications for the purpose of permitting a prisoner to file a second or successive petition challenging his conviction without a certificate of authorization. *See Sanders v. United States*, 373 U.S. 1, 15 (1963) ("Since the motion procedure [pursuant to § 2255] is the substantial equivalent of federal habeas corpus, we see no need to differentiate the two for present purposes.").

Consistent with this analysis, the Court of Appeals for the Seventh Circuit has held that the effect of the changes made by AEDPA, particularly the addition of the "except as provided by section 2255" clause to 2244(a), is to "channel[ ] all successive collateral attacks on a federal court's conviction or sentence into the prior-approval mechanism of § 2244(b)(3). Collateral attacks that do not address the conviction or sentence are unaffected by this channeling apparatus (although § 2244(a) bars successive petitions under § 2241 directed to the same issue concerning execution of a sentence)." *Valona v. United States*, 138 F.3d 693, 695 (7th Cir. 1998) (Easterbrook, J.).

Significantly, in *Barapind v. Reno*, 225 F.3d 1100 (9th Cir. 2000), we applied the Seventh Circuit's analysis in *Valona* in the course of holding that § 2244(a) did not bar a § 2241 habeas petition filed by an INS detainee. We observed that, "[a]s noted by the Seventh Circuit, § 2244(a) prevents a federal inmate from using § 2241 'to call into question the validity of a conviction or sentence that has already been subject to collateral review.' " *Barapind*, 225 F.3d at 1111 (quoting *Valona*, 138 F.3d at 694). Barapind's challenge to a decision of the BIA was not precluded because it did not call into question the validity of a conviction or sentence and "because § 2244(a) [only] bars successive petitions seeking review of the propriety of a detention '*pursuant to a judgment of a court*

*of the United States.'"* *Id.* at 1111 (quoting 28 U.S.C. § 2244(a)).

Subsequently, the Court of Appeals for the Tenth Circuit appeared to have adopted the holding in *Valona. See Ackerman v. Novak*, 483 F.3d 647 (10th Cir. 2007) (per curiam). Thus, it observed:

> The reference to § 2255 in the AEDPA-amended version of § 2244(a) appears to incorporate the appellate pre-authorization gatekeeping requirements of § 2255[h], which sets forth the grounds upon which a circuit court may authorize a second or successive § 2255 motion, and, in turn, incorporates the pre-authorization procedures in § 2244(b)(3).

*Id.* at 650.

More recently, however, in *Stanko v. Davis*, 617 F.3d 1262 (10th Cir. 2010), the Tenth Circuit declined to follow *Ackerman* because it involved a challenge to a military court martial and a military court is not a "court of the United States," as the term is used in § 2244(a). "As a consequence, § 2244(a) did not apply to the § 2241 petition before [the panel], which challenged a military court-martial conviction." *Stanko*, 617 F.3d at 1266. And *Ackerman's* discussion of the pre-authorization issue was dicta. *Id.*

Significantly, *Stanko* did not involve a collateral attack on a judgment of conviction or sentence of the kind that *Valona* and *Barapind* held required a certificate of authorization. Instead, Stanko alleged that the Bureau of Prisons had improperly determined that he was not qualified to participate in a residential drug abuse program and that, consequently, he was not eligible for a one-year reduction in his sentence under 18 U.S.C. § 3621(e)(2)(B). This relief "challenges the *execution* of a federal prisoner's sentence," *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001), rather than the validity of the

judgment of conviction and sentence. Consequently, there was no reason why Congress would have prescribed a certificate of authorization for such challenges. Indeed, the conditions under which a certificate of authorization may be issued, *see* § 2255(h), simply do not lend themselves to challenges to the execution of a federal sentence, which generally relate to "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian*, 245 F.3d at 146.

Under these circumstances, all that was necessary to resolve the issue of the necessity of prior appellate authorization for Stanko's petition was to say that the relief sought was not the kind of relief, namely, a collateral attack on a judgment of conviction, for which Congress intended to impose the prior-authorization requirement. Indeed in *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348 (11th Cir. 2008), the Eleventh Circuit so held in a run-of-the-mill case in which a federal prisoner filed a successive petition challenging a decision of the Parol Commission on the same ground that he had raised unsuccessfully in an earlier petition. Just as in *Stanko*, the habeas corpus application in *Antonelli* raised claims traditionally cognizable under § 2241. *Id.* at 1352. Thus, "it was not subject to gatekeeping in [the Eleventh Circuit]." *Id.* Nevertheless, it was subject to dismissal, as a second or successive petition because "[s]uccessive § 2241 petitions by federal prisoners are subject to threshold dismissal in the district court . . . ." *Id.*

Instead of such a common-sense disposition of the case, *Stanko* engaged in a protracted discussion of the issue why the "except" clause did not apply to any petition filed pursuant to § 2241. Before proceeding to dissect this analysis, I pause to emphasize the fact that the holding in *Stanko* compels the dismissal of Alaimalo's petition, even if he was not required to obtain authorization to file his fourth § 2241 application seeking relief on grounds identical to those presented in two of his

three prior applications. Thus, *Stanko* expressly held that "[t]he statutory limitations on a federal inmate's ability to file multiple § 2241 petitions are contained in 28 U.S.C. § 2244(a)," 617 F.3d at 1266, and that those limitations invariably require the dismissal of repetitive § 2241 applications that raise no new issues, *id.* at 1270. Indeed, *Stanko* acknowledged that:

> When Congress amended § 2244(a) in 1996 as part of AEDPA, it removed the provision that had previously excepted from the statutory bar petitions raising new claims. In its current form, the plain language of § 2244(a) applies both to petitions that present a claim previously raised and adjudicated and those that raise a new claim. As currently worded, § 2244(a) could be read to bar *any* second or subsequent habeas petition that challenges 'the legality of [the petitioner's] detention' if a court has previously determined that the detention was legal. This could include claims that were raised but not adjudicated in a previous petition and even those that could not have been raised in a previous petition.

*Id.*

Notwithstanding its recognition that "§ 2244(a) could be read to bar *any* second or subsequent habeas petition," *Stanko* held, for reasons that are not relevant here, that second or successive petitions that raise claims that had not previously been decided were not subject to such a preclusive reading. Consistent with this holding, *Stanko* upheld the dismissal of four of the six claims that Stanko raised on the ground that they asserted the same legal grounds as a prior petition. *Id.* at 1270; *accord Antonelli*, 542 F.3d at 1352. Nevertheless, *Stanko* held that § 2244(a) did not preclude Stanko from raising the "two remaining claims [that] appear[ed] to be new," 617 F.3d at 1270, although those claims were subject to dismissal under the common law doctrine of the abuse of the

writ, *id.* at 1272. Thus, *Stanko* clearly holds that § 2241 applications raising claims that have been rejected in prior such applications are barred by § 2244(a) and, because the subsection authorizing the filing of successive petitions without authorization does not apply to such applications, they are precluded altogether. As noted above, this holding, if applied here, would require the dismissal of Alaimalo's third successive application.

Nevertheless, the majority ignores the holding in *Stanko* and its implications for the present case. Instead, it focuses on one aspect of *Stanko*'s holding, namely, that § 2244(a) does not require authorization by the appropriate court of appeals for a second or successive application pursuant to § 2241 challenging a judgment of conviction. The majority expressly adopts *Stanko*'s analysis of the "except" clause of § 2244(a) and holds, without any discussion, much less consideration of either *Valona* or *Barapind*, that "because Alaimalo's § 2241 petition is permitted by the 'escape hatch' of 28 U.S.C. § 2255(e), his failure to seek prior-certification from the Court of Appeals did not divest the district court of jurisdiction in this case." Majority Op. at 8327, n.1.

This holding conflates two separate issues. The first is whether *an* application for a writ of habeas corpus pursuant to § 2241 may be filed notwithstanding the general prohibition against such petitions contained in § 2255(e). The second is whether, assuming he may file such a petition at all, a prisoner may file successive applications pursuant to § 2241 after his initial application was denied—and, as in the present case, the denial was not timely appealed. The fact that § 2255(e) may permit an initial application pursuant to § 2241 does not answer the question whether he may file successive petitions without the authorization of a court of appeals.

Nor does *Stanko* provide persuasive grounds for holding that the "except" clause of § 2244(a) does not incorporate the certificate of authorization requirement of § 2255(h). First,

*Stanko* correctly observed that "the plain language of § 2255(h) applies only to § 2255 motions." Specifically, "[s]ubsection (h) states that '[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals.' " 617 F.3d at 1266 (quoting § 2255(h)). Nevertheless, as previously noted, the fact that § 2255(h) applies by its terms to successive motions brought pursuant to § 2255 is not determinative because the certificate of authorization requirement is incorporated by reference in the "except as provided in § 2255" clause of § 2244(a). Indeed, this drafting method—incorporation by cross-reference—was used by Congress in § 2255(h) to incorporate the prior-authorization requirement "as provided in section 2244."

Second, *Stanko* ignores the plain language of § 2244(a) preceding the "except" clause, which confers discretion on the district court to decline or, conversely, to entertain a second or successive petition for a writ of habeas corpus pursuant to § 2241, "except as provided in § 2255." This clause plainly operates to limit the exercise of that discretion. Thus, if it means anything, it must mean that, just as in the case of § 2255, the district court judge must dismiss a petition challenging a judgment of conviction under § 2241 unless a certificate of authorization is granted by the appropriate court of appeals.

Third, *Stanko* assumed erroneously that, if the "except" clause of § 2244(a) is construed to require a certificate of authorization, that requirement would apply to any motion for a writ of habeas corpus that could be brought pursuant to 28 U.S.C. § 2241, many of which Congress could not possibly have intended to restrict in this way. *See Stanko*, 617 F.3d at 1267. But this argument simply ignores the fact that, as we held in *Barapind*, § 2244(a) operates only to "prevent[ ] a federal inmate from using § 2241 to call into question the validity of a conviction or sentence that has already been subject to collateral review." 225 F.3d at 1111 (internal quotation

marks omitted); *see also Vasquez v. Parrott*, 318 F.3d 387, 391-92 (2d Cir. 2003) ("It is manifest that in designing the standards under which a second or successive petition would be allowed, Congress was contemplating only petitions that challenged the lawfulness of the conviction . . . ."); *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998) (noting that "section 2244—one of the gatekeeping provisions of the AEDPA— was enacted primarily to preclude prisoners from repeatedly attacking the validity of their convictions and sentences.").

Fourth, *Stanko* suggested that, "if the bar erected by § 2244(a) incorporated the gatekeeping provisions of § 2255(h), federal inmates bringing § 2241 petitions would inexplicably be subject to far greater restrictions than would other types of inmates who might bring § 2241 petitions." 617 F.3d at 1268. This argument inexplicably ignores the fact that AEDPA "incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases." H.R. Rep. No. 104-518, at 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944. Consequently, it is not surprising that "AEDPA is designed primarily to preclude petitions brought by prisoners seeking to escape the consequences of their criminal behavior by challenging the validity . . . of their convictions or sentences." *In re Cain*, 137 F.3d at 235 n.1.

Finally, *Stanko* argued that subjecting second or successive petitions pursuant to § 2241 to the gatekeeping mechanism to which all collateral attacks on judgments of conviction are subject would somehow impede the ability of prisoners to obtain habeas corpus relief pursuant to § 2241 if they came within the escape hatch of § 2255. This argument, as I have already observed, simply conflates the issue of the availability of the escape hatch, as a means of filing *an* initial petition, with the analytically separate issue of the number of times such a petition may be filed. *See Stanko*, 617 F.3d at 1268.

In sum, a federal prisoner is barred from challenging his conviction in a second or successive habeas corpus applica-

tion pursuant to § 2241, without a certificate of authorization, even if the first petition was properly filed pursuant to § 2241. Alaimalo failed to obtain a certificate authorizing him to file his third successive petition pursuant to § 2241, the denial of which is the subject of this appeal. Nor could he meet the relevant condition for obtaining such a certificate because his petition does not rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Nor is it based on newly-discovered evidence of the kind prescribed there. Under these circumstances, the district court did not have jurisdiction to entertain the petition and we have no jurisdiction to hear the appeal. *Burton v. Stewart*, 549 U.S. 147, 152-53 (2007); *United States v. Lopez*, 577 F.3d 1053, 1061 (9th Cir. 2009).

## II.  Other Impediments to The Availability of Relief Pursuant to § 2241

While the majority relies on *Stanko v. Davis*, 617 F.3d 1262 (10th Cir. 2010), for its holding that the district court had jurisdiction to entertain Alaimalo's third successive petition, Majority Op. at 8327 n.1, it ignores both the holding in *Stanko* that § 2244(a) bars second or successive § 2241 petitions raising previously rejected claims and the dismissal of the successive application in *Stanko* that raised such a claim. Nevertheless, the majority does at least recognize two possible impediments to Alaimalo's current petition: the abuse of the writ doctrine and the law of the case doctrine. The majority holds that the law of the case doctrine is not applicable here because "failure to entertain Alaimalo's claim would result in manifest injustice." Majority Op. at 8334. And the majority rejects the abuse of the writ doctrine on the ground that the government bears the burden to raise it and failed to do so.

I first address the issue of manifest injustice, because it relates both to the law of the case and the abuse of the writ

doctrines, although the majority does not rely on it with respect to the latter. I then go on to address separately the other arguments made by the majority with respect to each of those doctrines, namely, that the law of the case established in *Alaimalo v. United States*, 317 F. App'x 619 (9th Cir. 2008), was clearly erroneous and that the law of the case doctrine is not applicable here, because the law of the case was not made in the same case as the present proceeding. And then, finally, I address the majority's objection to the application of the abuse of the writ doctrine.

## A.   The Threshold Issue: "Manifest Injustice"

We have had occasion to observe that "[t]he existence of special circumstances is required before a finding of manifest injustice . . . . At a minimum, the challenged decision should involve a significant inequity or the extinguishment of a right before being characterized as manifestly unjust." *Jeffries v. Wood*, 114 F.3d 1484, 1492 (9th Cir. 1997) (*en banc*) (internal citations omitted). Of course, for reasons already indicated at the outset, the earlier denials of the writ in this case do not satisfy this test because the only relief of which they deprived Alaimalo was a meaningless piece of paper. Indeed, the majority concedes that the writ it orders the district court to grant will have no effect on Alaimalo's sentence. Majority Op. at 8334. Nevertheless, the majority suggests that it is necessary to vacate the challenged counts of conviction in order to remove "the possibility that [Alaimalo] will be subject to their adverse collateral consequences." *Id*. These consequences are not specified.

More significantly, the cases on which the majority relies provide no support for the proposition that failing to eliminate the possibility of any of these consequences would constitute a "fundamental miscarriage of justice" or a "manifest injustice." Instead, those cases arose in an area of law—namely, the "case or controversy" inquiry, under Article III, § 2 of the Constitution—in which the Supreme Court has accepted "the

most generalized and hypothetical consequences as sufficient to avoid mootness in challenges to [a] conviction." *Spencer v. Kemna*, 523 U.S. 1, 10 (1998). Such speculative possibilities may be sufficient to overcome the doctrine of mootness, *see id.*, or even the concurrent sentence doctrine, *see Ball v. United States*, 470 U.S. 856, 865 (1985). Nevertheless, the suggestion that they constitute a "fundamental miscarriage of justice" or a "manifest injustice" renders those terms meaningless.

Indeed, in *Spencer v. Kemna*, the Supreme Court began a retreat from "its earlier willingness to presume adverse consequences sufficient to defeat a claim of mootness." 7 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 27.5(a) (3d ed. 2007). Specifically, it held that the possibility that a parole violation conviction could be used to impeach the defendant's testimony in a subsequent criminal prosecution was "purely a matter of speculation," and insufficient to permit him to challenge a revocation of parole after he had served his sentence, *Spencer*, 523 U.S. at 16, implicitly overruling dictum in *Ball*, 470 U.S. at 865. Similarly, in *Maleng v. Cook*, 490 U.S. 488 (1989), the Supreme Court held that a defendant who had completed serving his sentence could not obtain habeas corpus relief with respect to that conviction merely because it could possibly be used to enhance his sentence if he committed a subsequent crime, *id.* at 492, although it held open the possibility of a challenge to an actual subsequent sentence so enhanced, *id.* at 494. Indeed, even before *Spencer* or *Maleng*, the Supreme Court had decided that, while challenges to certain remaining counts of an indictment were not moot, it would "decline as a discretionary matter" to rule on their validity. *Barnes v. United States*, 412 U.S. 837, 848 n.16 (1973).

## B. The Law of the Case Doctrine

### 1. The Definition of "Clearly Erroneous"

The foregoing consideration aside, as the majority recognizes, Majority Op. at 8332-33, 8334, under the law of the

case doctrine, to the extent here relevant, a prior decision should be followed unless it was clearly erroneous and its enforcement would work a manifest injustice. *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995); *see also Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) ("Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice."). The phrase "clearly erroneous" suggests something more than simple error. As the Court of Appeals for Seventh Circuit put it:

> [U]nder the clearly-erroneous standard, we cannot meddle with the prior decision of this or a lower court simply because we have doubts about its wisdom or think we would have reached a different result. To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.

*Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). In sum, to be clearly erroneous, the prior panel's decision "must be dead wrong." *Id.* This stringent standard "rests on good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards." 18B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4478 (2d ed. 2002).

The prior holding of two district court judges, and three judges of the Ninth Circuit that "28 U.S.C. § 2255 was not an inadequate or ineffective remedy so as to allow Alaimalo to proceed under § 2241," *Alaimalo v. United States*, 317 F. App'x 619, 620 (9th Cir. 2008), was not clearly erroneous. Indeed, although we need not go that far to decide this case, the prior holdings were not error at all. Specifically, a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 may

be entertained notwithstanding the petitioner's "fail[ure] to apply for relief, by motion [pursuant to 28 U.S.C. § 2255], to the court which sentenced him, or that such court has denied him relief [if] the remedy by motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Alaimalo did initially file a petition for relief "to the court which sentenced him," although he did not challenge his conviction on the counts of importation on the ground on which Cabaccang ultimately prevailed. Nor, if he had raised the issue, could he have obtained relief from the district court because Ninth Circuit law had not changed since he unsuccessfully raised the issue on direct appeal. *Cf. Davis v. United States*, 417 U.S. 333, 341-42 (1974) (where Court of Appeals decision changed the law since petitioner's trial and appeal, law of the case doctrine did not bar a new hearing on a legal issue previously determined against him). Nevertheless, it is not so clear, as the majority suggests, that this circumstance rendered the remedy by motion, pursuant to 28 U.S.C. § 2255, "inadequate or ineffective to test the legality of his detention."

First, nothing would have precluded Alaimalo from seeking a change in applicable Ninth Circuit law. Indeed, at the time he filed his first petition, the Court of Appeals for the First Circuit had already ruled in an opinion that would be relied upon in *Cabaccang*, that a defendant's conduct in transporting drugs from one location within the United States to another, despite traveling over international waters, did not constitute "importation" within the meaning of 21 U.S.C. § 952(a). *See United States v. Ramirez-Ferrer*, 82 F.3d 1131, 1144 (1st Cir. 1996) (*en banc*). While the district court could not have granted Alaimalo's petition, because it was without power to alter prior Ninth Circuit precedent or the law of the case established on direct appeal, *see Davis*, 417 U.S. 341-42, the Ninth Circuit could have granted such relief. Indeed, Alaimalo's appeal was working its way through the Ninth Circuit, almost in lockstep with *Cabaccang*, and Cabaccang succeeded. Under these circumstances, relief by motion pursuant to 28 U.S.C. § 2255 was no more inadequate or ineffective to

test the legality of Alaimalo's detention than a direct appeal was to test the identical challenge raised by Cabaccang.

Significantly, in analogous circumstances, the Supreme Court has held that a procedural forfeiture occasioned by the failure of a state prisoner to make a timely objection was not excused by the alleged futility of such a timely objection. *Engle v. Issac*, 456 U.S. 107, 130 (1982). As Justice O'Connor wrote for the Supreme Court:

> If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

*Id.* (footnote omitted); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("As we clearly stated in *Engle v. Isaac*, 456 U.S. 107 (1982), futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.") (internal quotation marks and parallel citation omitted).

The change of law that Justice O'Connor suggested was possible actually occurred here during the pendency of Alaimalo's appeal, at the behest of another defendant who raised the same claim. Indeed, it would not be farfetched to suggest that Alaimalo might have prevailed had he first raised the issue on appeal from the denial of his § 2255 motion and moved to stay his appeal, after it became apparent that we were prepared to consider the *Cabaccang* claim *en banc*. While we generally do not consider claims raised for the first time on appeal, an application to add the *Cabaccang* claim would have come within the criteria we have adopted for invoking our discretion to review such a claim, including, *inter alia*, "when a new issue arises while appeal is pending

because of a change in the law . . . ." *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004) (O'Scannlain, J.) (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

In sum, it was hardly clear error to hold that Alaimalo could have raised his claim in a proceeding pursuant to 28 U.S.C. § 2255. Indeed, the district court judges who dismissed Alaimalo's petitions pursuant to § 2241 expressly relied on the unique facts discussed above to demonstrate that the remedy provided by § 2255 was adequate and effective to test Alaimalo's claim. *See Alaimalo v. Shultz*, No. 05-cv-300 (E.D. Cal. Sept. 29, 2005); *Alaimalo v. United States*, No. 06-cv-6872 (C.D. Cal. Sept. 25, 2007). The three judges of the Ninth Circuit presumably did the same when they affirmed the denial of the writ of habeas corpus. *See Alaimalo v. United States*, 317 F. App'x 619 (9th Cir. 2008).

Moreover, even in the absence of such unique circumstances, the inadequacy of the remedy afforded by § 2255 is not as clear cut as the majority suggests. First, the Court of Appeals for the Fifth, Seventh, and Eleventh Circuits have held that the so-called "escape-hatch clause" or "savings clause" of 28 U.S.C. § 2255(e) applies to a claim that was or could have been brought pursuant to § 2255 only when:

> 1) that claim is based on a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

*Wofford v. Scott*, 177 F.3d 1236, 1244 (11th Cir. 1999); *accord Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001) (following *Wofford*); *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). Moreover, in *Love v. Menifee*,

333 F.3d 69, 73 (2d Cir. 2003), the Second Circuit held that "Section 2255 is 'inadequate or ineffective,' however, only when a 'failure to allow for collateral review would raise serious constitutional questions' . . . " (quoting *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997)).

These extraordinary limitations underscore the fact that "[t]he savings clause and habeas corpus writs . . . exist in a delicate balance." *Reyes-Requena*, 243 F.3d at 901 n.19. Because "[s]ection 2255 is the primary collateral relief mechanism for federal prisoners," caselaw is clear that "the savings clause cannot create a detour around § 2255." *Id.*; *see also Moore v. Reno*, 185 F.3d 1054, 1055 (9th Cir. 1999) (per curiam) ("the dismissal of a subsequent § 2255 motion pursuant to 28 U.S.C. § 2244(b) does not render federal habeas relief an ineffective or inadequate remedy."). So, for example, § 2255(f) contains a one-year statute of limitation and § 2255(h) provides that a second or successive motion can only be filed if it is based on newly discovered evidence that would have resulted in a not guilty verdict or if it is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Obviously, a prisoner's inability to comply with these conditions does not render the remedy pursuant to § 2255 "inadequate or ineffective to test the legality of his detention." *See Love*, 333 F.3d at 73 (Section 2255 is not "inadequate or ineffective" simply because "its gatekeeping provisions bar review of a petitioner's claim."). Otherwise, the substantive and procedural barriers contained in § 2255 would be rendered meaningless and "Congress would have accomplished nothing at all in its attempts—through statutes like AEDPA—to place limits on federal collateral review." *Triestman v. United States*, 124 F.3d 361, 376 (2nd Cir. 1997) (Calabresi, J.).

Another reason for the extremely narrow construction of the savings clause is that it was originally intended to encompass only "practical difficulties" that a petitioner might have

encountered in complying with the directive in § 2255 that a petition must be filed in the district court "which imposed the sentence." *See United States v. Hayman*, 342 U.S. 205, 219 (1952). Nevertheless, while "[t]he question is not free from doubt," after an exhaustive analysis of the legislative history, the Eleventh Circuit concluded that the savings clause had somehow morphed into a vehicle that "is concerned with more than the practical difficulties." *Wofford*, 177 F.3d at 1241. This conclusion represents the prevailing view of the savings clause.

In order to give the language of the savings clause some effect, and yet avoid a construction of the savings clause that would render meaningless the constraints placed upon the issuance of a § 2255 writ, it has generally been construed to permit the filing of a habeas corpus petition pursuant to § 2241 only when a change in statutory construction adopted, and made retroactive, by the Supreme Court established that the petitioner had been found guilty of what turned out to be a non-existent offense. *See e.g.*, *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). As the Seventh Circuit explained, "[b]ecause Congress may have overlooked the possibility that new and retroactive statutory decisions [by the Supreme Court] could support collateral review, we held in *Davenport* that for this small class of situations § 2255 is 'inadequate or ineffective to test the legality of [the] detention.' " *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002) (alteration in original) (quoting 28 U.S.C. § 2255(e)).

Nevertheless, in granting Alaimalo relief pursuant to the savings clause of § 2255(e), the majority ignores altogether the carefully crafted limitations on the availability of habeas corpus relief. Indeed, a detailed analysis of the narrow scope of the savings clause is not to be found in the cases cited by the majority, *see* Majority Op. at 8328, only because they held that the petitioners were not otherwise entitled to relief pursuant to the savings clause. *See Stephens v. Herrera*, 464 F.3d 895 (9th Cir. 2006); *Ivy v. Pontesso*, 328 F.3d 1057 (9th Cir.

2003); *Lorentsen v. Hood*, 223 F.3d 950 (9th Cir. 2000). The present case is the first Ninth Circuit case to grant relief pursuant to the savings clause of § 2255(e), and it does so in a case where the petitioner is unable to meet the stringent conditions that other circuits have adopted. In so doing, it needlessly creates a clear conflict among the circuits in a case in which the relief it orders will give petitioner nothing.

## 2.   The Majority's "Same Case" Dictum

The majority suggests, without expressly holding, that the law of the case doctrine does not apply here because each of Alaimalo's petitions were separate and were not part of the same case. *See* Majority Op. at 8333. The idea that repeated attacks on the same judgment of conviction seeking identical relief are not part of the same case is simply wrong. *See, e.g.*, *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004); *Shore v. Warden, Statesville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991); *Raulerson v. Wainwright*, 753 F.2d 869, 875 (11th Cir. 1985). Indeed, the savings clause in § 2255(e) on which the majority relies to permit the filing of a petition pursuant to § 2241 is simply a way of avoiding the limitations on petitions pursuant to § 2255 in very narrow circumstances. The scope of the remedies provided by these two statutes is the same. *Compare* 28 U.S.C. § 2241(c)(3) *with* 28 U.S.C. § 2255(a); *see Kinder v. Purdy*, 222 F.3d 209, 214 (5th Cir. 2000); *Wofford v. Scott*, 177 F.3d 1236, 1241 (11th Cir. 1999). And § 2255 petitions have always been regarded as part of the underlying criminal case. *See United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000); *Grady v. United States*, 929 F.2d 468, 470 (9th Cir. 1990). There is no logical reason for treating § 2241 petitions differently.

Nevertheless, the majority claims to find support in Ninth Circuit caselaw for the proposition that the law of the case doctrine has not been applied "to claims in successive habeas petitions." Majority Op. at 8333. What the majority does not, and cannot, say is that *we have held* that the law of the case

doctrine cannot apply to such claims. On the contrary, the only cases it cites are those in which we have applied the law of the case doctrine to habeas corpus petitions following a panel's review of the case on direct appeal. *See id.* (citing *Phelps v. Alameida*, 569 F.3d 1120, 1140 n.23 (9th Cir. 2009), and *United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996)). The reason that we have not applied it to claims in successive petitions is that we have had no occasion to do so. Indeed, two of the cases that the majority cites for the proposition that "this circuit has not applied [the law of the case doctrine] to claims in successive habeas petitions" did not even involve the law of the case doctrine. *See id.* at 2945 (citing *Barapind v. Reno*, 225 F.3d 1100, 1110-12 (9th Cir. 2000), and *Farmer v. McDaniel*, 98 F.3d 1548, 1557-58 (9th Cir. 1996)).

Moreover, there is no basis for the majority's suggestion "that there is a split among out sister circuits as to whether to apply the law of the case to successive habeas petitions." Majority Op. at 8333. While the Second, Seventh, and Eleventh Circuits have applied the law of the case doctrine to successive habeas petitions, *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004); *Shore v. Warden, Statesville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991); *Raulerson v. Wainwright*, 753 F.2d 869, 875 (11th Cir. 1985), the two cases that the majority cites as holding to the contrary contain language that barely rises to the level of *dictum*. *Rosales-Garcia v. Holland*, 322 F.3d 386, 398 n.11 (6th Cir. 2003) (en banc) ("Whether successive habeas petitions constitute stages in a single, continuing lawsuit is a question that should be carefully considered[, a]lthough we do not decide the question . . . .") (internal citation omitted); *Lacy v. Gardino*, 791 F.2d 980, 985 (1st Cir. 1986) ("We need not decide . . . whether the two habeas petitions are the same or different cases requiring the application of either the law of the case doctrine or *stare decisis*."). Thus, while there does not presently exist a circuit split on the issue, the majority opinion goes a long way towards creating one.

### C.   Abuse of the Writ Doctrine

On the assumption that the abuse of the writ doctrine may otherwise be applicable here, the majority suggests that "[t]he government bears the burden of pleading abuse of the writ, . . . but it did not do so here." Majority Op. at 8332 (internal citation omitted). The abuse of the writ, as it is generally understood, applies "where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitle[s] him to the relief he seeks." *Schlup v. Delo*, 513 U.S. 298, 318 n.34 (1995) (internal quotation marks omitted). While the government generally bears the burden of pleading abuse of the writ, there is also general agreement that the abuse of the writ may be raised *sua sponte*. Indeed, in *Stanko v. Davis*, 617 F.3d 1262 (10th Cir. 2010), upon which the majority exclusively relies in holding that Alaimalo could file multiple petitions pursuant to § 2241 without any statutory restraint, the Tenth Circuit *sua sponte* invoked the abuse of the writ doctrine and dismissed Stanko's successive habeas corpus petition. *Id.* at 1270-72. *Accord United States v. Talk*, 158 F.3d 1064, 1067 (10th Cir. 1998) (holding court may raise procedural default *sua sponte* "if doing so will further the interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice") (internal quotation marks omitted), *abrogated on other grounds by Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Femia v. United States*, 47 F.3d 519, 522-23 (2d Cir. 1995); *United States v. Fallon*, 992 F.2d 212, 213 (8th Cir. 1993); *Andre v. Guste*, 850 F.2d 259, 261-62 (5th Cir. 1988); *cf. Barapind v. Reno*, 225 F.3d 1100, 1111 n.6 (9th Cir. 2000).

These holdings reflect the obvious fact that successive petitions implicate more than just the interests that one party may have in preserving the result of an earlier proceeding. As Professors Wright and Miller observe with respect to the closely analogous context of the failure to plead preclusion, the doctrine

goes beyond the interest of at least one party in repose and avoiding the burden of relitigation. Courts share these interests, and are concerned as well with avoiding inconsistent decisions. As courts became increasingly concerned with their own interests in forestalling repetitive litigation, it has become increasingly common to raise the question of preclusion on the court's own motion.

18 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4405 (2d ed. 2002). Indeed, we have had occasion to observe that the "[p]reclusion doctrine encompasses vindication of both public and private interests. . . . [T]he most purely public purpose served by preclusion rules is that of preserving the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same manner were twice litigated to inconsistent results." *Clements v. Airport Auth.*, 69 F.3d 321, 330 (9th Cir. 1995) (internal quotation marks and citation omitted). The public purpose is implicated for yet another reason in habeas corpus cases for, as Judge Friendly observed, "the most serious single evil with today's proliferation of collateral attack is its drain upon the resources of the community—judges, prosecutors, and attorneys appointed to aid the accused. . . . Today of all times we should be conscious of the falsity of the bland assumption that these are in endless supply." Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgment*, 38 U. Chi. L. Rev. 142, 148 (1970).

## CONCLUSION

The history of this case involves a terrible abuse of the writ in more than just its technical legal definition. The majority today sanctions a system in which a prisoner can bring endless petitions for a writ of habeas corpus for no apparent purpose until he finds two judges, as petitioner has here, who are willing to overthrow the work of three district court judges and three judges of the Ninth Circuit. In his seminal article on

the writ of habeas corpus, from which I quoted above, Judge Friendly observed that "[t]he proverbial man from Mars would surely think we must consider our system of criminal justice terribly bad if we are willing to tolerate such efforts at undoing judgments of conviction." *Id.* at 145. Because I am not as tolerant of such efforts as my two colleagues, I respectfully dissent.